The STATE of Ohio, Appellee,

v.

HENLEY, Appellant.

[Cite as *State v. Henley* (2000), 138 Ohio App.3d 209.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 99CA0049.

Decided May 24, 2000.

210

*Martin Frantz,* Wayne County Prosecuting Attorney, and *Christine C. Williams,* Assistant Prosecuting Attorney, for appellee.

*John E. Johnson, Jr.,* for appellant.

CARR, Judge.

John W. Henley appeals from his convictions in the Wayne County Municipal Court for criminal damaging and for discharging a firearm over a highway. This court reverses.

The following summary of the facts has been culled from the trial testimony of two officers from the Wayne County Sheriff's office. Both officers had been dispatched to Henley's home on the night of May 1, 1999, to investigate an incident related to a 9-1-1 call. The call had been placed by Henley's wife in response to a perceived assault on the Henleys' home. Henley had been at home with his wife and child when he heard a shot ring out. His wife and child, who had been inside the front of the family home, ran to Henley, alarmed that the house had just been shot at. Henley proceeded to retrieve a shotgun and, then,

to exit from the front of the house. Standing approximately ten to fifteen feet from the road, at a location halfway between the house and the road, Henley observed a car coming down the road. Another shot rang out from the car, and Henley heard something again hit the house. In response, Henley fired the shotgun in the direction of the car as it continued down the road.

The first officer on the scene was unaware that Henley had fired at the car. He discovered this fact when he found the car parked in a neighbor's garage down the street. The car belonged to Jeremy Kauffman, the son of one of the neighbors. Kauffman initially denied that an incident had taken place, but then confessed that he and another individual had "shot" the Henleys' home with paint balls. The officer inspected Kauffman's vehicle and learned that bird shot fired by Henley had struck and damaged the car.

Both officers then spoke with Henley, who at first said nothing when asked about having fired at Kauffman's car. Henley then admitted that he had shot in the direction of the car and provided the officers with a statement, the shotgun, a spent shell casing, and a shell casing that had not been fired. The first officer on the scene testified that Henley had explained that he did not know that he had been shot at with paint balls at the time of the incident. The officer further testified on cross-examination that he believed that Henley was in fear of being shot and that Henley did not know the nature of the shots at the time of the incident.

On July 12, 1999, following a trial to the court, Henley was convicted of one count of criminal damaging, R.C. 2909.06(A)(1), and of one count of discharging a firearm over a highway, R.C. 3773.211 (see now R.C. 2923.162[A][3]). In an entry journalized on August 12, 1999, Henley was sentenced to sixty days in jail on each count half of which was suspended and half of which could be served by electronically monitored house arrest. Henley was also fined $100 on each charge and placed on probation for one year, which included twenty hours of community service, restitution, and completion of a gun safety course. Furthermore, the court ordered that Henley's firearm be forfeited. Execution of this sentence was stayed for thirty days pending appeal.

Henley asserts four assignments of error, which will be rearranged for ease of discussion.

### Assignment of Error No. IV

"The trial court erred by rejecting self-defense as a valid defense to charges of criminal damaging, [R.C.] 2909.06(A)(1), and discharging a firearm over a highway, [R.C.] 3773.211."

In his fourth assignment of error, Henley argues that the trial erred by precluding him from presenting evidence demonstrating that he had acted in self-defense. This court agrees.

Self-defense is an affirmative defense that a defendant must prove by a preponderance of the evidence. *State v. Williford* (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, 1281. The Supreme Court of Ohio has explained that " '[w]here one is assaulted in his home, or the home itself is attacked, he may use such means as are *necessary* to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life.' " (Emphasis *sic*.) *Id.* at 250, 551 N.E.2d at 1282, quoting *State v. Peacock* (1883), 40 Ohio St. 333, 334, 1883 WL 106. Therefore, a defendant who seeks to establish self-defense must prove that (1) he "was not at fault in creating the situation giving rise to the affray," (2) he had a bona fide belief that he was being attacked or that his home was being attacked in such a manner that material injury to the home would result and that force was the only means to prevent such harm and (3) he did not violate any duty to retreat or to avoid the danger. See *State v. Jackson* (1986), 22 Ohio St.3d 281, 283, 22 OBR 452, 454, 490 N.E.2d 893, 896.

The transcript of the proceeding below reveals that the trial court rejected outright the applicability of self-defense:

"[HENLEY, *pro se*]: Do you believe I was reasonable fear [*sic*] at the time that I and yourself, reasonable fear of being ten to fifteen feet away from a roadway of being shot at that it could have been something that could have harmed me?

"[Prosecutor]: Your Honor, I'm going to object that causes for speculation.

"THE COURT: Again and you're also getting at self-defense which is not a defense to either one of these charges, sir. The objection will be sustained."

Henley was therefore unable to pursue this line of questioning further. This action by the trial court was in error, however. In addressing the issue of whether self-defense could be raised as a defense to a charge of criminal damaging brought under a city code section that is analogous to the criminal damaging provision set forth in the Revised Code, the Twelfth District reasoned:

"Although Mason Code Section 541.03 and its corresponding state code section, R.C. 2909.06, do not specifically enumerate the affirmative defense of self-defense, such a defense does exist via R.C. 2901.05(C)(2), which defines an affirmative defense as '[a] defense involving an excuse or justification particularly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.' " *State v. Bravard* (Oct. 6, 1986), Warren App. No. CA85-12-093, unreported, 1986 WL 11239, at *2.

■ This court agrees with the Twelfth District's rationale and declines to issue a blanket rejection of the potential applicability of self-defense in cases where, as here, the circumstances necessitating self-defense unavoidably lead to actions resulting in other alleged criminal violations. To hold that an individual cannot act in self-defense for fear of incurring a charge of criminal damaging or another related charge when the action behind the charge is so intertwined with the attack necessitating self-defense would be to produce an inane legal paradox; it would be illogical, for example, to hold that an individual may be innocent of assault or an even more significant charge due to self-defense, but nonetheless guilty of criminal damaging because property was necessarily damaged in the course of doing that which the law allows.

Following the trial court's rejection of self-defense, the state rested and Henley, acting *pro se,* declined to testify. He did, however, inform the trial court that he would like to make a statement. The trial court responded by informing Henley that he could testify, but that he would then be subject to cross-examination. Henley twice declined to testify.

After the state declined to make a closing argument, the trial court then inquired as to whether Henley wanted to make a final comment about the evidence that had been presented, to which Henley responded as follows:

"Yes sir, I believe that [on] the night in question it was dark outside, we agree, it was a very close proximity when this person shot paint ball guns toward me, very dark, noises were heard, evidence has shown that they did in fact hit close to me, behind me, the house, have a child inside, family, I did not know at the time that 911 call we had called and said that we were getting shot at. It wasn't until that time that we discovered that there had been paint ball shootings in the neighborhood, it was dismissed as (inaudible) at first and I believe I was getting shot at and I did not know it was a paint gun. That's all I have to say."

The trial court proceeded to find Henley guilty of both charges against him. Henley and the trial court then engaged in a dialogue in which Henley attempted to explain that, while he respected the trial court's concern over the fact that he could have hurt someone, "it easily could have been a gun" that he was facing.

These proceedings indicate that Henley attempted to present the defense of self-defense to the charges against him, but that the trial court precluded him from doing so in a mistaken belief that self-defense did not apply to the charges against him. Although Henley's argument was rejected by the trial court even before he could present his case, it is clear from the record that Henley had begun and intended to pursue arguing that he had believed that a real gun was being used against his house. See *Graham v. State* (1918), 98 Ohio St. 77, 81–82, 120 N.E. 232, 233 ("[T]he defendant may not take the stand at all or offer any evidence in defense. The evidence of self-defense may come wholly from the

state * * *."). Accordingly, without expressing any opinion as to the validity of this defense given the incomplete presentation of relevant evidence, this court finds that Henley should have been afforded the opportunity to prove self-defense. The fourth assignment of error is well taken.

### Assignment of Error No. I

"The trial court erred by failing to make any inquiry prior to trial to determine whether the defendant fully understood and intelligently waived his right to counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

### Assignment of Error No. II

"The trial court erred by imposing a sentence of confinement upon the defendant after failing to comply with the requirements of Criminal Rule 44 in that neither the advice nor the waiver of counsel was made on the record."

In his first assignment of error, Henley alleges that the trial court erred by failing to advise him of his constitutional right to the assistance of counsel and by failing to inquire as to whether Henley was aware of the risks of self-representation. He then argues in his related second assignment of error that the trial court failed to comply with Crim.R. 44 by imposing a sentence of incarceration without having obtained a waiver of counsel on the record. Although this court's disposition of the fourth assignment of error is by itself dispositive of this appeal, this court will address Henley's arguments related to waiver of counsel so that this error will not continue to undermine the integrity of the proceedings below upon remand.

Crim.R. 44 provides:

"(B) Counsel in petty offenses. Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.

"(C) Waiver of counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22."

In interpreting these provisions, this court has previously explained:

"Crim.R. 44 governs a criminal defendant's right to counsel and provides that a criminal defendant charged with a serious offense has a right to counsel at every stage of the proceedings. It also provides that a criminal defendant charged with a petty offense may be assigned counsel if he is unable to obtain counsel."

*Sheffield Village v. Poltis* (Dec. 9, 1998), Lorain App. No. 97CA006881, unreported, 1998 WL 852930, at *2.

■ Crim.R. 2(C) defines a "serious offense" as "any misdemeanor for which the penalty prescribed by law includes confinement for more than six months," while Crim.R. 2(D) defines a "petty offense" as "a misdemeanor other than [a] serious offense." Henley was charged with violations of R.C. 2909.06(A)(1) and 3773.211, which in the instant case are misdemeanors of the second and first degrees, respectively. See R.C. 2909.06(B) and 3773.99(C). R.C. 2929.21(B)(2) provides that a defendant may not be imprisoned for more than ninety days for a misdemeanor of the second degree, while R.C. 2929.21(B)(1) provides that a defendant may not be imprisoned for more than six months for a misdemeanor of the first degree. Therefore, the R.C. 2909.06(A)(1) and 3773.211 charges against Henley are petty offenses that invoke the mandates of Crim.R. 44(B).

■ The Sixth Amendment to the United States Constitution requires that a defendant in a criminal trial be afforded the assistance of counsel. *Akron v. McMaster* (July 23, 1997), Summit App. No. 18151, unreported 1997 WL 423042, citing *Argersinger v. Hamlin* (1972), 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538; *Akron v. Johnson* (Mar. 31, 1993), Summit App. Nos. 15797 and 15831, unreported, 1993 WL 89719, citing *Argersinger, supra.* See, also, *State v. Wellman* (1974), 37 Ohio St.2d 162, 171, 66 O.O.2d 353, 358, 309 N.E.2d 915, 920, citing *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. This requirement is applicable to all criminal prosecutions where the defendant is incarcerated as a result, absent a knowing and intelligent waiver. *Johnson, supra*; *Wellman*, paragraph one of the syllabus, citing *Argersinger.* The Supreme Court of Ohio has held that "[i]n order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether [a] defendant fully understands and intelligently relinquishes that right." *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph two of the syllabus. This inquiry allows a waiver of counsel to " 'be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Id.* at 377, 74 O.O.2d at 531, 345 N.E.2d at 406, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321. Accordingly, this court has previously explained that "before a defendant may serve as his own counsel, the defendant must knowingly, intelligently, and voluntarily waive his right to assistance of counsel." *State v. Weiss* (1993), 92 Ohio App.3d 681, 684, 637 N.E.2d 47, 49, citing *Faretta v. California* (1975), 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581–582. Although such a waiver may be express or

implied, the trial court nonetheless " 'must make sufficient inquiry to determine whether [a] defendant fully understands and intelligently relinquishes that right.' " *Id.* at 685, 637 N.E.2d at 49, quoting *Gibson,* at paragraph two of the syllabus. "Even when the waiver of counsel is implied by the defendant's purported delaying tactics, a pretrial inquiry as to the defendant's knowing and intelligent waiver of the right must be made." *Id.* at 685, 637 N.E.2d at 49–50, citing *United States v. Allen* (C.A.10, 1990), 895 F.2d 1577, 1579. Therefore, there must be a "showing on the record that the defendant who elects to conduct his own defense had some sense of the magnitude of the undertaking and the hazards inherent in self-representation." *Id.* at 685, 637 N.E.2d at 50, citing *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582.

■ Given these considerations, it cannot be said in the instant case that Henley waived his constitutional right to the assistance of counsel. The record indicates that Henley appeared at his May 25, 1999 arraignment without counsel. Although the reverse side of one of the complaints filed against him indicated that Henley had hired an attorney, the record fails to indicate that any attorney had ever filed a notice of appearance on behalf of Henley. On July 12, 1999, Henley then appeared for trial *pro se.* Prior to the commencement of trial, the trial court had an affirmative duty to advise Henley of his right to have the assistance of counsel and to inquire as to whether Henley fully comprehended the risks inherent in self-representation. However, no such action was taken.

The record does not reveal any attempt by the trial court advising Henley of his right to counsel or inquiring whether he was aware of the risks of self-representation. Instead, the transcript of the proceedings below indicates that the trial judge made no inquiry whatsoever as to Henley's lack of representation prior to the commencement of trial:

"THE COURT: All right, we have for trial CRB–99–05–0086 State versus John Henley. Is the state ready to proceed?

"[PROSECUTOR]: Your Honor, at this time the state is not prepared to proceed as Jeremy Kauffman who is the victim in this case in terms of the criminal damaging was not subpoenaed [by] our office. I believe it was an oversight when I was gone on vacation. There is only Deputy McFarren and Sergeant Garrison. I'm having the deputy go out to nineteen hundred South Elyria Road right now if the court would like to start proceeding now with the discharging charge.

"THE COURT: Very well. Mr. Henley are you ready to proceed with trial?

"MR. HENLEY: (Inaudible) happen the criminal (inaudible) to have that dismissed since he is not here at this time?

"THE COURT: That motion is premature. Are you ready to proceed with trial?

"MR. HENLEY: (Inaudible.)

"THE COURT [to the Prosecutor]: You can be seated, call your first witness, please."

In light of the above dialogue, this court cannot say that a valid waiver was obtained. Henley's first assignment of error must be well taken.

As a result, Henley's second assignment of error, related to the imposition of confinement, must also be sustained. As noted, Crim.R. 44(B) provides that "[w]hen a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(B) therefore codifies the rule from *Argersinger* in which the Supreme Court of the United States held that a trial court may not impose a sentence of confinement on an unrepresented defendant unless the defendant effectively waived counsel and that waiver appears on the record. *State v. Haag* (1976), 49 Ohio App.2d 268, 270, 3 O.O.3d 301, 303, 360 N.E.2d 756, 758. Here, Henley was sentenced to sixty days in jail on both charges, with thirty days of each sentence suspended and thirty days of each sentence subject to being served by electronically monitored house arrest.

The state argues that because Henley had both the funds and the opportunity to hire an attorney, his failure to do so constituted a waiver. Specifically, the state argues:

"In the case at bar, [Henley] told the court at arraignment that he would be hiring his own attorney. He then made his own request for discovery, appeared for trial without counsel, and did not object to proceeding with trial *pro se*. [Henley] had ample time and funds to hire an attorney. But for [Henley's] own neglect, he could have hired an attorney and could have even requested a continuance to seek counsel. [Henley] merely proceeded with trial without objections."

This totality of the circumstances argument is without merit. See, *e.g.*, *Akron v. Hill* (Jan. 10, 1996), Summit App. No. 17230, unreported, 1996 WL 11983 (rejecting an implied waiver based on the totality of the circumstances when no *Weiss* inquiry was conducted). First, the state has mistakenly relied upon the trial court's having purportedly informed Henley of his right to counsel at the arraignment as sufficiently fulfilling the court's duty.[1] Second, the issue of

---

1. No transcript of the arraignment has been forwarded to this court on appeal.

whether Henley could afford counsel is immaterial to the determination of whether the trial court fulfilled its obligation to conduct a sufficient inquiry into Henley's right to waive counsel. Third, the state has incorrectly placed the burden of protecting Henley's right to counsel upon Henley in contravention of clear contrary precedent.

 This court has held that informing a defendant of the right to counsel at arraignment is insufficient, because "[t]he duty to inform [a defendant] of that right prevail[s] upon the court at every critical stage." *State v. Darrington* (Nov. 21, 1979), Medina App. No. 871, unreported. This is so because, contrary to the state's argument placing the obligation on the defendant to object to a violation of this duty, "[i]t is the judge's duty to [ensure] that the defendant understands all aspects of a decision to waive the right to counsel." *Id.*, citing *Von Moltke v. Gillies*, 332 U.S. at 723–724, 68 S.Ct. at 323–324, 92 L.Ed. at 320–321; *State v. Gibson*, 45 Ohio St.2d at 376–377, 74 O.O.2d at 531, 345 N.E.2d at 406.

In support of its waiver theory, the state cites *Haag* as standing for the proposition that a defendant who could have obtained counsel, but did not, has effectively waived his right to the assistance of counsel, *regardless of what appears on the record*. This is not an accurate description of this court's holding in *Haag*. In that case, the defendant was tried without the assistance of counsel and convicted of a petty offense. He was then sentenced to a period of incarceration. The defendant was not indigent and apparently had not requested an attorney. This court vacated the sentence on grounds that the proceedings did not comply with Crim.R. 44, stating:

"[W]hen a defendant (1) is convicted of a petty offense; (2) an imprisonment penalty is imposed; and (3) he is not represented by an attorney at his trial, the imprisonment portion of the sentence will be vacated, unless a record is made (in accordance with Crim.R. 22 and Crim.R. 44) which affirmatively demonstrates either that the defendant would have been able to obtain counsel, or he knowingly waived his Sixth Amendment right to counsel." *Haag*, 49 Ohio App.2d at 271, 3 O.O.3d at 303, 360 N.E.2d at 759. See, also, *State v. Whipple* (Apr. 30, 1997), Summit App. No. 17997, unreported, 1997 WL 242665.

Subsequently, this court revisited the holding in *Haag* and explained:

"[O]ur holding in *Haag* must not be read so as to allow a defendant who is convicted of a petty offense, and who was not represented by an attorney at trial, to be sentenced to a term of incarceration upon a showing that the defendant 'would have been able to obtain counsel.' * * *

"Rather, 'unable to obtain counsel' is properly read as an indication that the appointment of counsel by the trial court is not to be limited exclusively to cases where the defendant is indigent. Even where an accused is financially able, in

whole or in part, to obtain the assistance of counsel, but is unable to do so for whatever reason, appointed counsel must be provided, or no sentence of incarceration may be imposed." (Citations omitted and emphasis deleted.) *State v. Domers* (June 6, 1990), Wayne App. No. 2535, unreported, 1990 WL 77233, at *3–4. Consequently, the issue of whether Henley could afford an attorney is immaterial, in the absence of a record that supports the trial court's decision to proceed to trial.

The trial court is required to make an inquiry on the record as to whether a criminal defendant such as Henley has obtained counsel, desires to obtain counsel, or is able to obtain counsel. In instances where a defendant expresses to the court that he wishes to proceed without an attorney, the record must reveal that the court has inquired into whether the defendant understood the ramifications of the charges and other risks related to proceeding without counsel. The trial court in Henley's case made no such inquiry, yet proceeded in error to impose a term of imprisonment on Henley. Therefore, the first and second assignments of error are also well taken.

### Assignment of Error No. III

"The trial court erred by finding the defendant guilty of criminal damaging, a violation of [R.C.] 2909.06(A)(1), where there was no evidence presented by the state on the element of lack of consent."

Given this court's disposition of the fourth, first, and second assignments of error, Henley's third assignment of error is moot and need not be addressed. See App.R. 12(A)(1)(c).

The judgment of the Wayne County Municipal Court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BATCHELDER, P.J., and BAIRD, J., concur.