OPINION
{¶ 1} Defendant-appellant, Russ G. Foster, appeals his conviction in the Butler County Area III Court for menacing. We affirm appellant's conviction, but vacate the jail term imposed as part of his sentence.
 {¶ 2} On April 24, 2001, appellant was awoken around 8:00 a.m. by a loud noise. Tracy Donnelly, a new tenant of the condominium complex where appellant resided, was having her carpets cleaned. Appellant lived two doors down from Donnelly. Appellant testified that he proceeded to the apartment and informed Donnelly and the carpet cleaners that the complex had a noise policy and asked that they turn off the machine. Donnelly and the carpet cleaners testified that appellant told them of the noise policy and belligerently screamed to "shut the God-Damn thing off."
 {¶ 3} Appellant testified that after approximately ten minutes he went back down to Donnelly's apartment a second time and asked that the machine be turned off. Donnelly and her witnesses testified that on appellant's second visit he again screamed belligerently for the machine to be turned off.
 {¶ 4} Appellant then testified that he called his condominium manager who told him to call the police for assistance. Appellant proceeded down to Donnelly's apartment for a third time to inform them that he was going to call the police if they did not turn off the machine.
 {¶ 5} Appellant testified that at this time the carpet cleaners laughed at him and said, "we are not turning anything [off], but we will kick your ass." Appellant testified that he retorted, "if you force me to defend myself we'll see who's [sic] ass gets kicked."
 {¶ 6} Donnelly and the carpet cleaners testified that appellant came over the third time belligerently asking that the machine be turned off or he would "kick [the carpet cleaner's] ass." Donnelly testified that she believed appellant's threats were serious at the time. Scott Qvuick, one of the carpet cleaners, testified that he thought appellant "was going to come in on us and start swinging."
 {¶ 7} Qvuick further testified that appellant said he would turn off the machine. Qvuick stated that he was concerned because turning off the machine without idling it down could possibly "burn the machine up." The other carpet cleaner, Jesse Thompson, also testified that he was concerned that appellant would damage the machine and that he "didn't know what [appellant] was going to do."
 {¶ 8} Appellant maintains that Qvuick, a 44-year-old, was not at Donnelly's apartment during his three visits. He maintains that two 19-to-23-year-olds were cleaning the carpets. Appellant's witness, Robert Miller, observed appellant's third visit from about 25 to 30 feet across the complex parking lot. Miller did not remember Qvuick as being present during this third incident. He also testified that the carpet cleaner threatened to kick appellant's butt. Miller related that during this confrontation appellant, although upset, did not use profanity and was not screaming "obsessively."
 {¶ 9} After the third visit, appellant returned to his home and called 9-1-1 to report the noise violation. Officer Joseph Buschelman was dispatched to the scene. Officer Buschelman obtained statements from Donnelly, Qvuick and Thompson. He then went to appellant's apartment to obtain a statement. He testified that he told appellant that Qvuick had filed a menacing charge against him. Officer Buschelman further testified that appellant became belligerent, refused to speak to him, and demanded to speak with the chief of police. Officer Buschelman's superior, Sergeant Ledermeier, arrived later and spoke with appellant.
 {¶ 10} The trial court found appellant guilty of menacing, fining him $100 plus court costs and sentencing him to three days in jail. The trial court then suspended the three-day sentence, placing him on nonreporting probation for two years. The suspended sentence was conditioned upon appellant's completion of an anger management program. Appellant appeals raising two assignments of errors.
Assignment of Error No. 1
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF RUSS G. FOSTER IN FINDING HIM GUILTY OF MENACING: THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT JUDGE HENDRICKSON'S OPINION."
 {¶ 11} Appellant contends that the trial court did not properly weigh the evidence and erred in concluding that he was guilty of menacing. Appellant argues that the state produced no evidence that he knowingly caused Qvuick to believe he would cause him physical harm.
 {¶ 12} A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge
(1988), 38 Ohio St.3d 56, 59. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 {¶ 13} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 14} Appellant was charged and convicted of menacing. R.C.2901.22(A) states in pertinent part, "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result. R.C. 2901.22(B).
 {¶ 15} In this case, Donnelly, Qvuick and Thompson testified that appellant came over three times and belligerently asked that the machine be turned off. Furthermore, all three testified that appellant threatened to "kick [the carpet cleaner's] ass." Qvuick and Thompson also stated that appellant threatened to turn off the machine which could cause its engine to "burn up."
 {¶ 16} Qvuick testified that he thought appellant "was going to come in on us and start swinging." Donnelly related that she believed appellant's threats were serious. Both Qvuick and Thompson testified that they believed appellant was going to improperly turn off the machine which could damage it.
 {¶ 17} Contrarily, appellant testified that the carpet cleaners told him they were going to "kick [his] ass." He also stated that Qvuick, a 44-year-old, was not present during these three incidents. Miller testified on appellant's behalf stating that there were two 19-to-23-year-olds cleaning the carpets and that he heard the carpet cleaners threaten to "kick appellant's butt."
 {¶ 18} Where there is a contradiction between two accounts of an incident, we note that the trial court, as the trier of fact, is in the best position to assess the witnesses' credibility. See State v. Martin
(1986), 21 Ohio St.3d 91, 95. Under the facts of this case, the trial court could find that appellant was aware that his conduct could probably cause Qvuick to believe that he would cause him or his machine physical harm. Therefore, after reviewing the record, we find that the trial court did not lose its way in finding appellant guilty of menacing. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF RUSS G. FOSTER IN NOT ADEQUATELY ADVISING HIM OF HIS RIGHTS TO A COURT APPOINTED ATTORNEY IF COULD NOT AFFORD AN ATTORNEY."
 {¶ 19} Appellant contends that he was not informed of his right to an attorney, after he told the trial court he did not have the financial means to hire one himself.
 {¶ 20} Crim.R. 44(B) provides the requirements for assigning counsel in petty offense cases. It states in pertinent part, "[w]here a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(B). Waiver of counsel is to be in open court with the advice and waiver recorded. Crim.R. 44(C).
 {¶ 21} On the day of his trial, appellant appeared pro se. After the witnesses were sworn in and Donnelly had begun her testimony, the trial court then confirmed with appellant that he had signed a waiver of counsel and waiver of jury rights form. However, the waiver of counsel form was not signed.[1] The trial court then asked if appellant had the financial means of hiring an attorney. Appellant replied, "[p]robably not." He also testified that he has had several medical problems and was "pretty tapped out financially." Upon further questioning by the trial court, appellant stated that he owned a condominium and that he had made two years of payments. After which, the following colloquium occurred:
 {¶ 22} "Judge: Alright. And you also have the right to a jury trial and you've waived that right as well.
 {¶ 23} "Mr. Foster: Yeah.
 {¶ 24} "Judge: Which means then I as the Judge will listen
 {¶ 25} "Mr. Foster: (INAUDIBLE)
 {¶ 26} "Judge: Alright. And you've waived these rights and you've done so knowingly, intelligently and voluntarily? Alright. I'm sorry, you may proceed."
Thereupon, the prosecution's questioning of Donnelly continued.
 {¶ 27} Absent a proper waiver of counsel for a petty offense, appellant cannot be sentenced to confinement. State v. Haag(1976),49 Ohio App.2d 268; Crim.R. 44(B). The record does not show that appellant knowingly, intelligently and voluntarily waived his right to counsel. Further, prior to the commencement of the trial, the trial court had a duty to inform appellant of his right to the assistance of counsel. State v. Henley (2000), 138 Ohio App.3d 209, 217. In this case, the witnesses had already been sworn in, and questioning of the prosecution's first witness had already commenced. Accordingly, we modify appellant's sentence and vacate that portion of the sentence imposing a jail term. The second assignment of error is sustained insofar as appellant's jail sentence is vacated.
Judgment affirmed as modified.
YOUNG and VALEN, JJ., concur.
[1] In a petty offense case, a waiver of counsel needs to be recorded. Crim.R. 22.