STATE OF CONNECTICUT *v.* NELSON RAMOS
(SC 16829)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued April 15—officially released November 23, 2004

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *Vernon Oliver* and *William Watson III*, assistant state's attorneys, and *Proloy K. Das*, deputy assistant state's attorney, for the appellant (state).

*Kent Drager*, senior assistant public defender, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The defendant, Nelson Ramos, was convicted after a jury trial on charges of assault in the second degree in violation of General Statutes § 53a-60 (a) (2)[1] and having a weapon in a motor vehicle in violation of General Statutes (Rev. to 1997) § 29-38.[2]

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[2] General Statutes (Rev. to 1997) § 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means any . . . dangerous or deadly weapon or instrument . . . ."

The Appellate Court reversed his conviction under § 29-38 on the ground that there was insufficient evidence that the defendant had possession of the weapon, a hammer, in his vehicle with the intent to use it as a dangerous instrument. *State* v. *Ramos*, 70 Conn. App. 855, 863, 800 A.2d 631 (2002). On appeal to this court,[3] the state challenges that determination. The defendant claims as an alternate ground for affirmance that there was insufficient evidence to prove beyond a reasonable doubt that the hammer was in the motor vehicle when he used it. The defendant also claims that, should the state prevail on its claim on appeal, this court should order a new trial because: (1) the trial court improperly instructed the jury that the affirmative defense of self-defense did not apply to a charge of having a weapon in a motor vehicle under § 29-38; and (2) as applied in the present case, § 29-38 violates a citizen's right to bear arms in self-defense as guaranteed by article first, § 15, of the constitution of Connecticut.[4] We conclude that the Appellate Court improperly found that there was insufficient evidence to support the defendant's conviction under § 29-38. We also reject the defendant's alternate ground for affirmance and his claim that he is entitled to a new trial. Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "In October, 1998, the victim, Emil Szymczak, was employed as the superintendent of an apartment building at 38 Main Street in New Britain. As part of his

[3] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the evidence was insufficient to sustain the defendant's conviction under General Statutes § 29-38 because the state failed to prove that the defendant intended to carry the hammer in his vehicle with the intent to use it as a dangerous instrument." *State* v. *Ramos*, 261 Conn. 922, 806 A.2d 1063 (2002).

[4] Article first, § 15, of the constitution of Connecticut provides: "Every citizen has a right to bear arms in defense of himself and the state."

duties, Szymczak collected rent payments from tenants. On the evening of October 5, 1998, as he drove his car into the parking lot behind the apartment building, Szymczak saw the defendant, who resided in the building, sitting in a motor vehicle. Prior to that evening, Szymczak had attempted, without success, to collect overdue rent payments from the defendant. Szymczak walked to the defendant's vehicle and, through the open operator's side window, asked the defendant about the overdue rent. In response, the defendant handed Szymczak a piece of paper that presumably indicated that he was waiting for money from the state. As Szymczak was reading the paper, the defendant picked up a twenty ounce hammer that was in the vehicle and forcefully struck Szymczak with it twice on the forehead. Szymczak grabbed the hammer and struggled with the defendant for control of it. William Colon, a resident of the apartment building who witnessed the incident, called the New Britain police after both men called out to him to do so.

"When the police arrived at the scene, the defendant and Szymczak were still struggling for control of the hammer. Szymczak then let go of the hammer, and Officer Brian Pearson ordered the defendant to put the hammer down. Pearson had to repeat this order three or four times before the defendant complied. Pearson also ordered the defendant to exit his vehicle. After exiting his vehicle, the defendant told Pearson that Szymczak had asked him for rent money, that he did not have as much as Szymczak wanted, and that when Szymczak kept asking for the money he hit Szymczak twice with the hammer. At that time, the defendant stated that he had not been threatened by Szymczak.

"As a result of the altercation, Szymczak appeared 'dazed and pale' and he suffered two bloody, golf ball-sized welts on his forehead. Despite his condition, Szymczak refused medical assistance because he said

he had no health insurance and could not afford to pay for treatment. At the time of the trial, he testified that he still suffered headaches and had numbness in his arms as a result of being struck with the hammer.

"The defendant subsequently was arrested and charged in a four count information with attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), assault in the second degree in violation of § 53a-60 (a) (2), carrying a dangerous weapon in violation of General Statutes (Rev. to 1997) § 53-206 and carrying a weapon in a motor vehicle in violation of § 29-38. At the conclusion of the state's case, the defendant filed a motion for a judgment of acquittal as to all counts. The court granted the defendant's motion as to the first count, attempt to commit assault in the first degree, and the third count, carrying a dangerous weapon. With respect to the first count, the court concluded that the state had failed to present evidence that would support a finding by the trier of fact that the defendant intended to cause serious physical injury to the victim. With respect to the third count, the court concluded that there was no evidence that the defendant, at any time, had the hammer on his person. After the completion of the trial, the jury convicted the defendant of the two remaining counts. The court sentenced the defendant to two concurrent sentences of five years, execution suspended, with five years probation." *State* v. *Ramos*, supra, 70 Conn. App. 857–59. The Appellate Court reversed the decision of the trial court only as to the conviction of having a weapon in a motor vehicle and remanded the case with direction to render judgment of not guilty of that offense and to vacate the portion of the defendant's sentence related to that count. Id., 871. This certified appeal followed.

I

The state claims that the Appellate Court improperly concluded that the evidence was insufficient to sustain the defendant's conviction of having a weapon in a motor vehicle in violation of § 29-38. We agree.

Although framed by the parties as a sufficiency of the evidence claim, the issue before us is more properly understood as a question of statutory interpretation. Specifically, the question that we must answer is whether, under § 29-38, it is sufficient, as the state claims, that a defendant actually used an item in his motor vehicle in a manner capable of causing serious physical injury, or whether, as the defendant claims, the statute requires the state to prove that the defendant placed or carried the dangerous instrument in his vehicle with the intent to use it in such a manner. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 213, 796 A.2d 1141 (2002).[5]

We begin our analysis with the language of the relevant statutes. Section 29-38 provides that "[a]ny person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both . . . . The word 'weapon', as used in this section, means any . . . dangerous or deadly weapon or instrument . . . ." General Statutes

---

[5] "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1. Whether § 29-38 requires the state to prove that the defendant intended to use an item as a weapon is not clear from the text of the statute. Accordingly, we are not limited to the text of the statute in discerning its meaning.

(Rev. to 1997) § 29-38. Section 29-38 does not define the term "dangerous instrument." In *State* v. *Scully*, 195 Conn. 668, 678, 490 A.2d 984 (1985), we used the definition of "dangerous instrument" set forth in General Statutes § 53a-3 (7) to inform our understanding of that term as used in § 29-38. Section 53a-3 (7) defines "dangerous instrument" as "any instrument . . . which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

With this statutory language in mind, and before reviewing our case law governing § 29-38, we note that there is some ambiguity to the defendant's claim in that he does not state at what point a defendant must form the intent to use the item in a dangerous manner to satisfy the statute. This ambiguity highlights one of the difficulties inherent in the defendant's interpretation of § 29-38, as adopted by the Appellate Court, specifically, the difficulty in articulating any principled rule for identifying the point at which such an intent must be formed. As the state points out, under the Appellate Court's decision, it is "unclear what point along the temporal spectrum between the hammer's initial placement in the car through its ultimate use in an assault is the relevant point at which the specific intent to [have] the hammer [in the vehicle] as a dangerous instrument had to arise. It is also unclear how this amorphous requirement would apply to other situations, such as when a defendant uses an item as a dangerous instrument that had been brought into the motor vehicle by another person."

The Appellate Court determined that although the defendant had the intent to use the hammer as a dangerous instrument at the moment that he struck the victim, that intent did not satisfy the elements of § 29-38. See *State* v. *Ramos*, supra, 70 Conn. App. 863. If, as the defendant claims, the statute is not satisfied when a

person does not form the intent to use an item in the vehicle as a dangerous instrument until the instant that he uses it in such a manner, then it is difficult to understand why the statute would be satisfied when a person forms the intent ten seconds or an hour before he uses the item in a dangerous manner. Nevertheless, the statute plainly prohibits a person from knowingly *having* a dangerous instrument in a vehicle, however, as opposed to *placing* an item in a vehicle with the intent to use it as a dangerous instrument, and neither the defendant nor the Appellate Court argues otherwise.

In any event, because the Appellate Court determined that the defendant did have the intent to use the hammer as a dangerous instrument at the moment that he struck the victim, and because that determination is not at issue in this appeal,[6] we understand the defendant's claim to be that the state must prove that he had the intent to use the item as a dangerous instrument at some point in time, as yet unidentified, *before* he actually did so. Only if we were to agree with the Appellate Court that the statute imposes such a requirement would we be required to determine the precise point at which the intent must be formed.

We previously have held that "in a prosecution for a violation of § 29-38, the state must prove the following elements: (1) that the defendant owned, operated or occupied the vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no permit or registration for the weapon." *State* v. *Delossantos*, 211 Conn. 258, 273, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). Thus, neither the language of § 29-

---

[6] This court denied the defendant's petition for certification to appeal from the Appellate Court's determination that the hammer was a dangerous instrument as used by the defendant; *State* v. *Ramos*, 261 Conn. 921, 806 A.2d 1063 (2002); and granted the state's motion to strike the portion of the defendant's brief devoted to that claim.

38 nor our case law interpreting that statute suggests that having the item in the vehicle with the *prior* intent to use it as a weapon, or, in this case, as a dangerous instrument, is an element of the offense.[7] Rather, the language of § 53a-3 (7) indicates that the actual use of an item in a manner capable of causing serious physical injury renders the item a dangerous instrument. Accordingly, we conclude that, if a defendant knowingly has an item in a vehicle and intentionally uses that item in a manner capable of causing serious physical injury, the elements of § 29-38 have been met, regardless of whether he had a prior intent to do so.

The defendant argues, however, that the definition of a dangerous instrument as provided in § 53a-3 (7) does not apply to § 29-38 because § 53a-3 (7) was enacted in 1969; see Public Acts 1969, No. 828, § 3; thirty-four years after § 29-38 was enacted.[8] See General

---

[7] We note, however, that in *State* v. *Delossantos*, supra, 211 Conn. 272–73, the item in question was a revolver, which is one of the weapons specifically referred to in § 29-38. Thus, in formulating that statement of the statutory elements of the crime, we had no occasion, as we do in this case, to define how the presence of a dangerous instrument fits into those statutory elements.

[8] The Appellate Court in the present case concluded that the hammer was a dangerous instrument for purposes of § 29-38. *State* v. *Ramos*, supra, 70 Conn. App. 862. In support of that conclusion, the court noted that it previously had held that "[u]nder § 53a-3 (7), in order for an instrument to be considered dangerous, it need only be used in a manner capable of causing serious injury under the circumstances and, therefore, [t]he facts and circumstances need show only that the general way in which the object was used could *potentially* have resulted in serious physical injury." (Emphasis in original; internal quotation marks omitted.) Id., citing *State* v. *Green*, 38 Conn. App. 868, 880–81, 663 A.2d 1085 (1995).

This court denied the defendant's petition for certification to appeal from this determination by the Appellate Court. *State* v. *Ramos*, 261 Conn. 921, 806 A.2d 1063 (2002). The defendant then raised the claim as an alternate ground for affirmance. This court granted the state's motion to strike that claim. To the extent that the defendant's claim that the state was required to establish that he intended to use the hammer in a dangerous manner is inextricably intertwined with his claim that the Appellate Court misconstrued the phrase dangerous instrument, however, we must, in fairness to the defendant, consider both claims.

Statutes (Cum. Sup. 1935) § 1010c. Accordingly, he argues, the phrase dangerous instrument as used in § 29-38 must be understood in its ordinary sense, and, as a matter of ordinary usage, a hammer is not a dangerous instrument unless one intends to use it in a dangerous manner *before* doing so. In support of this argument, he relies on our statement in *State* v. *Scully*, supra, 195 Conn. 678, that "[a] citizens band walkie-talkie radio, film, chains, etc. are common, everyday possessions which anyone is allowed to transport in [a] motor vehicle without subjecting themselves to arrest absent something more." (Internal quotation marks omitted.) The defendant argues that the "something more" is intent to use the item in a dangerous manner *before* actually doing so.

Although we agree with the defendant that as a matter of law the definition set forth in § 53a-3 (7) does not apply to § 29-38, we believe that § 53a-7 provides guidance in determining the meaning of the phrase dangerous instrument as used in § 29-38. In *State* v. *Delossantos*, supra, 211 Conn. 275, we recognized that, "[b]ecause § 53a-3 *expressly provides* that the definitions contained therein have the following meaning when *used in this title* . . . it appears the legislature intended to restrict the scope of this provision to Title 53a only . . . ."[9] (Emphasis in original; internal quota-

---

[9] See also Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes Annotated § 53a-3 (West 2001), commission comment ("subsections [3], [4], [6] and [7] [physical injury, serious physical injury, deadly weapon and dangerous instrument] apply principally to the assault and robbery sections [of the Penal Code, while] . . . [s]ubsections [9] to [11] [intentionally, knowingly and recklessly] apply generally throughout the Code and the rest of the General Statutes"). "While the commission comment hardly has the force of enacted law, it, nevertheless, may furnish guidance." *Valeriano* v. *Bronson*, 209 Conn. 75, 94, 546 A.2d 1380 (1988).

In *State* v. *Delossantos*, supra, 211 Conn. 274, we determined that the definition of "firearm" in § 53a-3 (18) did not apply to § 29-38 because: (1) § 29-38 antedated the Penal Code; (2) § 29-27 defined revolver for purposes of § 29-38; and (3) § 29-38 specifically referred to § 53a-3 to define only

tion marks omitted.) See also *State* v. *Hill*, 201 Conn. 505, 515 n.7, 523 A.2d 1252 (1986). In *Hill*, in which the defendant had been charged with possession of a sawed-off shotgun in violation of General Statutes § 53a-211, we determined that the definition of the word "possess" as applied in connection with the crime of possession of a controlled substance with intent to sell; General Statutes (Rev. to 1972) § 19-480 (a); and possession of a narcotic substance; General Statutes (Rev. to 1972) § 19-481 (a); was instructive in determining the meaning of the word possess as used in § 53a-3 (2), even though § 53a-3 (2) did not apply to either narcotics statute. *State* v. *Hill*, supra, 514–15. We reasoned that "[t]he statutes are . . . criminal in nature and [narcotics charges], like the offense of possession of a sawed-off shotgun, involve the unlawful possession of an item. Related statutory provisions, or statutes 'in pari materia,' often provide guidance in determining the meaning of a particular word. . . . An approved definition of 'constructive possession' in the context of possession of narcotics is therefore a persuasive precedent for our determination of the scope of the word possess as defined by § 53a-3 (2), as long as that approved definition is not inconsistent with the statutory definition." (Citations omitted.) Id., 515–16.

In the present case, even though the "approved" definition of dangerous instrument in § 53a-3 (7) applies

one of several weapons listed and, therefore, implicitly excluded the other definitions of weapons contained in § 53a-3. We determined that although General Statutes § 53a-2 "states that the provisions of the penal code 'shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires' . . . we are persuaded that the 'context' of §§ 29-27 and 29-38 implicitly renders the penal code definition of 'firearm' inapplicable to prosecution for violating § 29-38." Id., 275; see also *State* v. *Hill*, 201 Conn. 505, 515 n.7, 523 A.2d 1252 (1986) (§ 53a-3 applies only to title 53a). We continue to believe that § 53a-3 applies only to title 53a. Because the phrase dangerous instrument as used in § 29-38 is not defined in title 29 and is not included in the term weapon, however, we conclude that we are not barred by *Delossantos* from consulting § 53a-3 (7).

only to the provisions of title 53a, it guides our interpretation of the phrase as used in § 29-38 because it is not inconsistent with any statutory language in § 29-38.[10] Indeed, we stated in *State* v. *Scully*, supra, 195 Conn. 678, immediately preceding the language on which the defendant relies, that § 53a-3 (7) "requires 'circumstances in which [the purported dangerous instrument] is used or attempted or threatened to be used' " and noted that such circumstances were not present in that case. Thus, in *Scully* we assumed that the definition of dangerous instrument in § 53a-3 (7) applied to § 29-38 and suggested that proof that the defendant actually used an ordinary household item in a dangerous manner could be sufficient to establish a violation of § 29-38. See id. "The legislature is presumed to be aware of the interpretation which the courts have placed upon one of its legislative enactments and of the effect that its own nonaction, thereafter may have." *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 63, 111 A.2d 4 (1955). "[W]e presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 333, 567 A.2d 1195 (1990). The legislature's failure to act upon our interpretation of § 29-38 in *State* v. *Scully*, supra, 678, suggests that the legislature agrees with it.

The defendant argues, nevertheless, that prior intent to cause physical injury must be an element of § 29-38

---

[10] We also note that the definition of dangerous instrument in § 53a-3 (7) is not inconsistent with the common meaning of dangerous instrument on which the defendant relies. "To ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term." (Internal quotation marks omitted.) *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 41 n.13, 787 A.2d 541 (2002). Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines "dangerous" as "able or likely to inflict injury or harm." Contrary to the defendant's claim, an item is able to inflict injury at the time that it is used in such a manner, regardless of whether there was prior intent to do so.

because, otherwise, a person who carries an ordinary household item with the intent to use it as a weapon, but who never uses it or attempts or threatens to use it as such, could not be charged under the statute. We disagree. The fact that a person may be charged with violating § 29-38 for using an item in a manner capable of causing serious physical injury, even if he did not intend to use the item as a weapon when he placed the item into his motor vehicle, does not suggest that a person who carries an item with the intent to cause serious physical injury may not be charged.

Accordingly, we conclude that § 29-38 does not impose on the state the burden of proving that the defendant had an item in a motor vehicle with the intent to use it as a dangerous instrument prior to actually using it. Proof that the defendant knowingly had the item in a vehicle and intentionally used it in a manner capable of causing serious physical injury is sufficient. In the present case, there was ample evidence that the defendant had the hammer in his vehicle and that he intentionally used it in a manner capable of causing serious physical injury.[11] Accordingly, we conclude that the Appellate Court improperly found that there was insufficient evidence to support the defendant's conviction under § 29-38.

## II

The defendant claims as an alternate ground for affirmance that there was insufficient evidence to support his conviction under § 29-38 because he did not use the hammer as a dangerous instrument *inside* the motor vehicle. He argues that the hammer did not become a dangerous instrument until the moment that it hit the victim's head. He further argues that, because

---

[11] As we have noted, the Appellate Court's determination that the defendant intentionally used the hammer as a dangerous instrument is not before us in this appeal.

the hammer was outside the car at that moment, there was insufficient evidence that he had a dangerous instrument "in" the motor vehicle as required by § 29-38. We disagree.

We assume for the purposes of addressing this argument that § 29-38 requires some nexus between having an item in a motor vehicle and using it as a dangerous instrument. In other words, if a person were to use a motor vehicle to transport a baseball bat to his residence and, three weeks later, use the bat as a weapon, we assume for the purposes of this opinion that the requirements of § 29-38 would not be met. In the present case, however, we conclude that any such nexus requirement was amply met. Here, at the latest, the hammer became a dangerous instrument for purposes of § 29-38 when the defendant, who was sitting in the vehicle, picked it up and swung it at the victim's head. Accordingly, there was ample evidence that the defendant had a dangerous instrument "in" the vehicle. The fact that the victim's head was not inside the vehicle when the hammer struck it is immaterial. Accordingly, we reject this claim.

## III

The defendant also claims that, should the state prevail on the certified question, we should order a new trial because the trial court improperly instructed the jury that the defense of self-defense did not apply to a charge under § 29-38. The defendant argues that he was entitled to an instruction on self-defense because the hammer became a dangerous weapon only because he used it to defend himself. We conclude that the trial court improperly failed to provide the jury with an instruction on self-defense to the charge of having a dangerous weapon in a motor vehicle, but that the impropriety was harmless.

The following procedural history is relevant to our resolution of this claim. At trial, the defendant requested that the trial court instruct the jury on the affirmative defense of self-defense but did not specify the count or counts of the information to which the defense applied. The trial court gave a self-defense instruction with respect to the assault charge, but, in accordance with a supplemental request to charge filed by the state, instructed the jury that self-defense was not a defense to the charge under § 29-38. The defendant did not object to the charge as given.

General Statutes § 53a-19 (a) provides in relevant part that "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . ." "In determining whether the defendant is entitled to an instruction of self-defense, we must view the evidence most favorably to giving such an instruction." *State* v. *Lewis*, 245 Conn. 779, 812, 717 A.2d 1140 (1998). The defendant bears "the initial burden of producing sufficient evidence to inject self-defense into the case." (Internal quotation marks omitted.) *State* v. *Lewis*, 220 Conn. 602, 619, 600 A.2d 1330 (1991). "To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense." (Internal quotation marks omitted.) *State* v. *Carter*, 232 Conn. 537, 545, 656 A.2d 657 (1995).

Before addressing the merits of the defendant's claim, we address the state's argument that the claim is not reviewable because the defendant did not request that the instruction on self-defense apply to the charge of having a weapon in a motor vehicle and did not object to the instruction actually given by the trial court. The

defendant counters that his general request to instruct the jury on self-defense was not limited to the assault charge, but applied to the charge under § 29-38 as well. Although we agree with the state that the record leaves some doubt as to whether the defendant's general request to charge was adequate to place the trial court on notice that he believed that the claim of self-defense applied to both charges, we read the failure to specify as an indication that it applied to both charges and that the claim was, therefore, preserved for review. See *Pestey* v. *Cushman*, 259 Conn. 345, 372–73, 788 A.2d 496 (2002) ("A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. Practice Book § 16-20.").

We now turn to the merits of the defendant's claim. In support of its supplemental request to charge the jury that the defense of self-defense did not apply to § 29-38, the state relied on dicta in *State* v. *Holloway*, 11 Conn. App. 665, 671, 528 A.2d 1176 (1987), that a self-defense instruction is not appropriate when the defendant has been charged with having a dangerous weapon in violation of § 53-206. See also *State* v. *Hopes*, 26 Conn. App. 367, 371–72, 602 A.2d 23 (duress instruction not available when defendant is charged with having pistol without permit in violation of General Statutes § 29-35 because use of force is not element of offense), cert. denied, 221 Conn. 915, 603 A.2d 405 (1992); *State* v. *Bailey*, 209 Conn. 322, 348–49, 551 A.2d 1206 (1988) (self-defense instruction not available when defendant is charged with having pistol without permit in violation of § 29-35 because use of force is not element of offense). By analogy, the state argues, the self-defense defense is not available under § 29-38 because force is not an element of that offense. The trial court apparently agreed with this reasoning.

The defendant argues, however, that this reasoning is not applicable in the present case because, unlike the cases on which the state relied, it was the manner in which the hammer was used that made it a dangerous instrument. See General Statutes § 53a-3 (7) (defining dangerous instrument as "any instrument . . . which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing . . . serious physical injury"); cf. *State* v. *Bailey*, supra, 209 Conn. 348 ("[i]n claiming self-defense to [the charge of carrying a pistol without a permit], the defendant is asserting a justification for carrying the pistol, not for using that pistol as she did"). He argues that, under the facts of this case, up until the moment that the hammer was used in a manner capable of causing serious physical injury, it was legal for him to have it in the vehicle. If the defendant reasonably used the hammer to defend himself from the use of physical force, he argues, then the violation of § 28-39 was justified.

In support of his argument, the defendant cites numerous cases from other jurisdictions in which courts have held that the otherwise illegal possession or use of a weapon may be justified if it was used in self-defense and the defendant did not possess the weapon illegally beforehand. See, e.g., *State* v. *Crawford*, 308 Md. 683, 701, 521 A.2d 1193 (1987) ("it is common sense that the legislature could not have intended that a man, who has been attacked and shot and lies injured . . . cannot pick up a handgun that, as luck would have it, falls next to him when he hears what he believes are his aggressors in hot pursuit"); *State* v. *Henley*, 138 Ohio App. 3d 209, 214, 740 N.E.2d 1113 (2000) ("[t]o hold that an individual cannot act in self-defense for fear of incurring a charge of [illegal discharge of a firearm] when the action behind the charge is so intertwined with the attack necessitating

self-defense would be to produce an inane legal paradox").[12] We are persuaded by the reasoning of these cases and conclude that it would be illogical and unfair to punish a defendant for possession of an instrument, the use of which would otherwise be illegal, when the defendant's use of the instrument as a weapon was in reasonable response to an unprovoked attack. We find it unlikely that the legislature intended to force a choice between, on the one hand, using an otherwise legal item to defend oneself and being charged under § 29-38, or, on the other hand, foregoing such reasonable use and exposing oneself to the risk of physical injury. Accordingly, we conclude that, when the item that the defendant is charged with having in the vehicle is an otherwise legal item and did not become a dangerous instrument within the meaning of § 29-38 until it was used in self-defense, the defendant may raise § 53a-19 as a defense.[13]

---

[12] See also *United States* v. *Gomez*, 92 F.3d 770, 774–75 (9th Cir. 1996) (justification defense available to defendant charged with illegal possession of firearm); *United States* v. *Paolello*, 951 F.2d 537, 539 (3d Cir. 1991) (same); *United States* v. *Panter*, 688 F.2d 268, 272 (5th Cir. 1982) (self-defense defense available to defendant charged with illegal possession of firearm); *People* v. *King*, 22 Cal. 3d 12, 24, 582 P.2d 1000, 148 Cal. Rptr. 409 (1978) (same); *Cauley* v. *State*, 260 Ga. 324, 326, 393 S.E.2d 246 (1990) (same); *State* v. *Blache*, 480 So. 2d 304, 308 (La. 1985) (same); *People* v. *Almodovar*, 62 N.Y.2d 126, 130, 464 N.E.2d 463, 476 N.Y.S.2d 95 (1984) (justification is defense to otherwise unlawful use of weapon, but not to illegal possession); *State* v. *Hardy*, 60 Ohio App. 2d 325, 330, 397 N.E.2d 773 (1978) (self-defense defense available to defendant charged with having weapon in violation of statute); *Johnson* v. *State*, 650 S.W.2d 414, 416 (Tex. Crim. 1983) (necessity defense not unavailable as matter of law to defendant charged with illegal possession of handgun).

[13] In *State* v. *Holloway*, supra, 11 Conn. App. 666, the defendant was carrying a knife with a cutting blade less than four inches long. He was charged under § 53-206, which does not prohibit specifically the carrying of such a knife. Id., 666–67. It is not entirely clear whether the court in *Holloway* determined that the knife was a dangerous weapon within the meaning of § 53-206 or a dangerous instrument as defined in § 53a-3 (7). To the extent that the court determined that it was the defendant's use of the knife that made it a dangerous instrument, we overrule the court's dicta that the self-defense defense was not available to the defendant in a prosecution under § 53-206.

In the present case, the trial court concluded that the defendant had satisfied his initial burden of providing sufficient evidence to inject self-defense into the case with respect to the assault charge. It is clear, therefore, that there was sufficient evidence to support a self-defense instruction on the charge under § 29-38. Accordingly, we conclude that the trial court improperly refused to give such an instruction. We also conclude, however, that the impropriety was harmless.

"The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." (Internal quotation marks omitted.) *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 460, 610 A.2d 598 (1992); see *Arizona* v. *Fulminante*, 499 U.S. 279, 308, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Therefore, "[t]he harmlessness of an error depends upon its impact on the trier [of fact] and the result [of the case]." *State* v. *Jones*, 215 Conn. 173, 185, 575 A.2d 216 (1990). "[A]n erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Yurch*, 229 Conn. 516, 522, 641 A.2d 1387, cert. denied, 513 U.S. 965, 115 S. Ct. 430, 130 L. Ed. 2d 343 (1994).

In *State* v. *Hall*, 213 Conn. 579, 589, 569 A.2d 534 (1990), we held that "the jury's verdict of guilty on the offense of manslaughter in the first degree was necessarily a rejection of the defense of self-defense. Since the elements of self-defense as applied to manslaughter in the second degree would have been the same as those applied to manslaughter in the first degree, the defendant would not have benefited by an instruction that the defense was applicable to manslaughter in the second degree." See also *State* v. *Cartagena*, 47 Conn. App. 317, 325, 708 A.2d 964 (1997),

cert. denied, 244 Conn. 904, 714 A.2d 3 (1998); *State* v. *Williams*, 25 Conn. App. 456, 467–68, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991).

Likewise, in the present case, the charges of having a weapon in a motor vehicle and second degree assault arose from the same set of facts. The jury's verdict of guilty on the second degree assault charge, and its concomitant rejection of the defendant's claim that he had used the hammer in self-defense, necessarily implied that it would have rejected a finding of self-defense on the charge of having a weapon in a motor vehicle. Accordingly, it is not reasonably possible that the jury would have reached a different result had it been instructed on self-defense as to the charge of having a weapon in a motor vehicle.

IV

In light of our conclusion in part III of this opinion that a defendant is entitled to an instruction on self-defense when there is evidence that he has used an otherwise legal item in a vehicle in a manner capable of causing serious physical injury in order to protect himself from the use or imminent use of physical force, we need not address the defendant's claim that, in the absence of the availability of such an instruction, § 29-38 would violate the defendant's constitutional right to bear arms under article first, § 15, of the constitution of Connecticut.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment of conviction.

In this opinion the other justices concurred.