[Cite as *State v. Hendrix*, 2013-Ohio-2430.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

    v.

ANDRE D. HENDRIX
DELISHA R. SCOTT

    Appellees

C.A. Nos.    26648
              26649

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   CR 2011 12 3384 (A)
             CR 2011 12 3384 (B)

DECISION AND JOURNAL ENTRY

Dated: June 12, 2013

WHITMORE, Judge.

{¶1} Appellant, the State of Ohio, appeals from the judgment of the Summit County Court of Common Pleas, granting Defendant-Appellees, Andre Hendrix and Delisha Scott's, motion to suppress. This Court reverses.

I

{¶2} On the morning of October 31, 2011, the Stow Police Department received a call from a resident of Suffolk Downs regarding the resident's next-door neighbor's house.[1] In particular, the resident notified the dispatcher that the garage door of the next-door neighbor's house had been open for several days and that it was unusual for the door to be open. Two Stow police officers responded to the scene and observed the open door of the attached garage. They

---

[1] Although the resident gave his or her name to the dispatcher, the resident's name is not a part of the record.

then attempted to make contact with the neighbors, but were unsuccessful. After the officers walked around the exterior of the home and were unable to see inside or confirm whether anyone inside might be in need of aid, the officers entered the home through the unlocked man door in the attached garage. The officers did not find anyone in the home, but came upon a large indoor grow room for marijuana. They then exited the home and contacted their department to secure a warrant. Subsequently, the police identified the owner of the home, Andre Hendrix, as well as a woman who stayed at the home, Delisha Scott.

{¶3} A grand jury indicted both Hendrix and Scott on each of the following counts: possession of marijuana, illegal cultivation of marijuana, trafficking in marijuana, and possession of criminal tools. Hendrix also was indicted for having weapons while under disability. Subsequently, Hendrix filed a motion to suppress, and the trial court allowed Scott to join in Hendrix's motion. A suppression hearing took place on July 26, 2012. On September 25, 2012, the trial court granted Hendrix and Scott's motion to suppress.

{¶4} The State filed notices of appeal in both Hendrix and Scott's cases, and this Court agreed to consolidate the two appeals. The State's appeal from the trial court's ruling on the motion to suppress is now before this Court and raises one assignment of error for our review.

II

Assignment of Error

THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION
TO SUPPRESS.

{¶5} In its sole assignment of error, the State argues that the trial court erred by granting Hendrix and Scott's motion to suppress. Specifically, the State argues that the police were justified in entering Hendrix's home without a warrant based on the exigent circumstances doctrine.

**{¶6}** The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied). Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

**{¶7}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a search based upon probable cause and the existence of exigent circumstances. *See State v. Price*, 134 Ohio App.3d 464, 467 (9th Dist.1999), quoting *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985). A "narrower subset" of the exigent circumstances exception is the emergency aid exception. *State v. Gooden*, 9th Dist. No. 23764, 2008-Ohio-178, ¶ 6. The emergency aid exception "allows the police 'to enter a dwelling without a warrant and *without probable cause* when they reasonably believe, based on specific and articulable facts, that a person within the

dwelling is in need of immediate aid.'" (Emphasis added.) *State v. Baker*, 9th Dist. No. 23713, 2009-Ohio-2340, ¶ 6, quoting *Gooden* at ¶ 6.

{¶8} "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). *Accord State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, syllabus.

> This Court has recognized a three-prong test to determine the propriety of warrantless entry in emergency situations: 1) the police must have "reasonable grounds to believe that there is immediate need" to protect the lives or property of themselves or others; 2) the circumstances, as viewed objectively, justify the warrantless entry; and 3) there is a reasonable basis, short of probable cause, to associate the place to be searched with an emergency.

*Baker* at ¶ 7, quoting *Gooden* at ¶ 10. "Anonymous tips, when corroborated by other factors, events or circumstances, may provide the requisite reasonable grounds to justify the warrantless entry." *Baker* at ¶ 7. The State bears the burden of proving that a warrantless home entry was justified under the circumstances. *State v. Liscoe*, 9th Dist. No. 25441, 2011-Ohio-1054, ¶ 9.

{¶9} Officer David Hall, a 26-year veteran of the Stow Police Department, testified that the department received a phone call at 10:30 a.m. from a resident of Suffolk Downs. The resident reported that a neighbor's garage door had been standing open for several days and that it was unusual for the door to be standing open for so long. Officer Hall drove to the house that was the subject of the call, 3279 Suffolk Downs, where he met with another officer, Officer David Semonin. When he arrived at the house, Officer Hall noticed that the house's attached garage door was fully opened and no cars were present. Officer Hall and Officer Semonin went to the neighbors on each side of the house, but could not find anyone at home. They then returned to the house to conduct a visual inspection. Officer Hall testified that he and Officer Semonin walked around the house, inspected the doors, and tried to look in through the

windows. Although the officers did not observe any damage to any of the doors or windows, Officer Hall stated that they could not see inside the house through the windows "because of the blinds and curtains and stuff like that."

{¶10} After their efforts to speak to neighbors and to allay their concerns by way of visual inspection failed, Officer Hall testified that he and Officer Semonin then went inside the attached garage to check the man door. The officers found the door unlocked and decided to go inside the house. Officer Hall testified that two primary concerns caused him to enter the house. First, Officer Hall was concerned that someone in the house might be injured, dead, or otherwise in need of help. Second, Officer Hall testified that he was aware that there had been approximately eight to ten daytime burglaries in the Stow area in the previous three months. Consequently, he also was concerned that a burglary might be occurring or that someone might have been injured as a result of a burglary.

{¶11} Officer Hall stated that he and Officer Semonin checked the basement and first floor of the house before going upstairs. Once upstairs, they checked all of the other rooms before coming to a closed door. Officer Hall observed a bright light coming from the cracks in the door and heard a fan running. Concerned that someone might be in need of help inside the room, the officers opened the door. Officer Hall testified that he immediately recognized a large marijuana grow room. After he and Officer Semonin confirmed that no one was in the room, they left the house and contacted another officer who later procured a warrant to search the house and seize the marijuana.

{¶12} Officer Semonin also testified at the suppression hearing and reiterated that he and Officer Hall responded to a dispatch based on a neighbor reporting that the garage door at 3279 Suffolk Downs had been standing open for several days. Much like Officer Hall, Officer

Semonin testified that he entered the house because he felt the circumstances were such that someone inside might need help. He also testified that he knew a lot of burglaries had occurred in Stow during the daytime. Officer Semonin specified that he and Officer Hall entered the house to check whether there was some kind of emergency situation inside.

{¶13} The record reflects that the trial court here premised its judgment upon several factual inaccuracies. In reciting Officer Hall's testimony, the trial court wrote that Officer Hall and Officer Semonin "looked in the windows and saw no evidence of anyone home or out of the ordinary." The court further wrote that Officer Hall "testified that he and Officer Semonin saw nothing askew in the residence when they peered through the windows." Officer Hall's actual testimony, however, was that he and Officer Semonin were unable to see inside of the house when they looked in the windows due to the curtains and blinds. Therefore, the officers were not able to dispel their concerns by looking in the windows. As to the information Officer Hall received from dispatch, the trial court wrote that "Officer Hall admitted that he did not know if the call to police emanated from a neighbor or someone driving by the residence." Yet, Officer Hall maintained throughout his testimony that the call the police received was from a neighbor. Officer Hall testified on cross-examination that, at the time he responded to the call he was not sure *which* neighbor had called, but he knew that the caller was, in fact, a neighbor. Finally, the trial court wrote in its judgment entry that, "[b]esides noting that the garage door was open or had been open for several days, the neighbor that called the police did not indicate that there was any unusual behavior at the residence or even that it was unusual for the garage door to be open." To the contrary, Officer Hall testified that the neighbor who called stated both that the garage door had been standing open for several days and that it was unusual for it to be standing open.

{¶14} "This Court must only accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Figueroa*, 9th Dist. No. 09CA009612, 2010-Ohio-189, ¶ 20. The trial court's factual findings here are not supported by competent, credible evidence. As set forth above, the court's findings contain several factual inaccuracies. Moreover, we cannot conclude that the factual inaccuracies had no impact upon the court's ultimate decision. The trial court's conclusion was to grant the motion to suppress because there was "not one shred of evidence" from which a reasonable officer could have concluded that someone was in need of assistance or that a crime was being committed. The court's conclusion might have been otherwise if based upon factually accurate findings. In any event, this Court "cannot address the court's application of the law, as its factual findings are not supported by competent, credible evidence." *Liscoe*, 2011-Ohio-1054, at ¶ 14.

{¶15} Because the evidence introduced at the suppression hearing does not support the trial court's findings, we must conclude that the court erred by granting Hendrix and Scott's motion to suppress. Thus, the State's sole assignment of error is sustained on that basis and the matter is remanded to the trial court for a new suppression hearing.

III

{¶16} The State's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
BETH WHITMORE
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

WALTER T. MADISON, Attorney at Law, for Appellee.

ANTHONY JORDAN, Attorney at Law, for Appellee.