[Cite as *State v. Lindow*, 2016-Ohio-913.]

STATE OF OHIO  )    IN THE COURT OF APPEALS
         )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

| STATE OF OHIO | C.A. No. 27417 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID LINDOW | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014-01-0004 |

DECISION AND JOURNAL ENTRY

Dated: March 9, 2016

CARR, Presiding Judge.

{¶1} Appellant, David Lindow, appeals the judgment of the Summit County Court of Common Pleas. This Court reverses and remands.

I.

{¶2} This case arises from a traffic stop on December 15, 2013. Silver Lake police initiated a stop of Lindow's truck because he was operating the vehicle with a suspended license. Police subsequently discovered several containers holding marijuana during the inventory search of the truck. After charges were initially filed in the Stow Municipal Court, the matter was bound over to the Summit County Grand Jury where Lindow was charged with trafficking in marijuana with an attendant forfeiture specification, driving under suspension, illegal possession of drug paraphernalia, and possession of marijuana. Lindow filed a motion to suppress seeking to suppress the items found during the inventory search as well as the statements he made to

police during the search. The trial court held a hearing and issued a journal entry denying the motion on March 26, 2014.

{¶3} The matter proceeded to a jury trial where Lindow was found guilty of trafficking in marijuana, driving under suspension, and possession of marijuana. The count of illegal possession of drug paraphernalia was dismissed pursuant to Crim.R. 29. The trial court concluded that the counts of trafficking in marijuana and possession of marijuana were allied offenses of similar import, and that the count of possession of marijuana was merged into the trafficking charge for the purposes of sentencing. The trial court sentenced Lindow to 24 months of community control.

{¶4} On appeal, Lindow raises four assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT DENIED LINDOW HIS RIGHTS AGAINST UNREASONABLE SEARCH AND SEIZURE AND DUE PROCESS WHEN IT OVERRULED HIS MOTION TO SUPPRESS, IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.

{¶5} In his first assignment of error, Lindow contends that the trial court erred in denying his motion to suppress. This Court agrees.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as

true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997). We emphasize, however, that "[t]his Court must only accept the trial court's findings of fact if they are supported by component, credible evidence." *State v. Hendrix*, 9th Dist. Summit Nos. 26648, 26649, 2013-Ohio-2430, ¶ 14, quoting *State v. Figueroa*, 9th Dist. Lorain No. 09CA009612, 2010-Ohio-189, ¶ 20.

{¶7} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution enunciate the right of persons to be free from unreasonable searches and seizures. These constitutional protections prohibit unreasonable searches and seizures, not every search and seizure. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). "The United States Supreme Court has held that the Fourth Amendment is not violated by a warrantless, routine, inventory search of an impounded automobile where the inventory search was not a pretext concealing an investigatory motive and the inventory search was not unreasonable in scope." *State v. Schlairet*, 9th Dist. Medina No. 1594, 1987 WL 16500 (Aug. 26, 1987), citing *South Dakota v. Opperman*, 428 U.S. 364, 375-376 (1976).

{¶8} In his motion to suppress challenging the validity of the inventory search of his vehicle, Lindow argued that the inventory search was (1) a pretext concealing an investigatory police motive; (2) conducted in violation of departmental policy; (3) conducted outside the scope of the limited exception of an inventory search. In ruling on the motion to suppress, the trial court ultimately determined that the search was a lawful probable cause search and that it was

unnecessary to address the arguments pertaining to the scope of the inventory search and whether the search was conducted in violation of departmental policy. Now before this Court on appeal, Lindow raises numerous arguments in support of his first assignment of error. Most notably, Lindow contends that the trial court's probable cause determination was predicated on factual findings that were not supported by competent, credible evidence.

{¶9} A review of the hearing transcript reveals that Officers David Childers and Drake Oldham of the Silver Lake Police Department were the only witnesses to testify at the suppression hearing. On December 15, 2013, Officer Childers was on patrol when he stopped Lindow's pickup truck because Lindow had a suspended license. The vehicle was a construction worker's truck with a lockable tool box fixed to the side of the bed. Lindow was the sole occupant of the vehicle and he was notified that, in addition to receiving a citation for driving under suspension, it would be necessary to tow his vehicle. Officer Oldham arrived to provide backup and to execute the inventory search of the truck. Officer Childers explained that he had very little to do with the execution of the inventory search in this case because that was handled by Officer Oldham.

{¶10} With respect to the details of the inventory search in this case, Officer Oldham testified that after examining the interior of the vehicle, he moved toward the bed of the truck where there were numerous tools. Officer Oldham testified that during the inventory, he smelled the odor of fresh marijuana. When asked on direct examination if he smelled marijuana prior to opening the toolboxes in the bed of the truck, he responded, "It was right about the time the boxes were starting to get opened up." To clarify, the assistant prosecutor inquired whether Officer Oldham smelled the marijuana "before unlocking anything[.]" Officer Oldham answered, "No. That case was opened and that is when I saw the pack of cigarettes." When

asked how that tool box came to be opened, Officer Oldham indicated that he unlocked it himself using the key provided by Lindow. Lindow had given his keys to Officer Childers, who in turn had given the keys to Officer Oldham. Officer Oldham testified that he first smelled the marijuana after he unlocked the toolbox with a key. When Lindow was approached about the marijuana in the toolbox, he stated, "I guess it is mine." Lindow then acknowledged that there was marijuana in a suitcase sitting in the truck. After Officer Childers retrieved the suitcase, Officer Oldham continued the inventory search and found additional unlocked containers holding marijuana.[1]

{¶11} In its March 26, 2014 journal entry, the trial court concluded that it was unnecessary to address Lindow's challenges to the legality of the inventory search because "the facts disclose[d] an alternative justification to the search of [Lindow's] vehicle- contraband." The trial court concluded that the search was lawful because there was probable cause to believe that containers within the vehicle contained marijuana. In setting forth its findings of fact, the trial court stated that "[a]s Officer Oldham proceeded with the inventory he smelled the odor of fresh marijuana emanating from the locked tool box on the right side of the truck's bed. He used the key provided to him by [Lindow] to open the box and found a cigarette box with rolling papers, roaches, and a baggie of marijuana[.]" As the trial court explained in its journal entry,

---

[1] There was conflicting evidence presented by the State regarding the purpose of the inventory search as well as the police department's inventory policy. Officer Childers initially testified that one of several reasons for conducting an inventory search was to "look for contraband, if there is any." When asked to clarify his response, Officer Childers reiterated, "Generally it would be [to search] for contraband, anything illegal." Contrary to Officer Childers, Officer Oldham testified that the sole purpose of the inventory search was to prepare the vehicle to be towed. With respect to the departmental policy for inventory searches, Officer Childers testified that the officers check open containers for items but that "locked containers require a search warrant." Officer Oldham explained that his understanding of the departmental policy for inventory searches was that locked containers should not be opened without a warrant, unless the containers could be opened without damaging them by using a key.

the probable cause determination was predicated on its factual finding that Officer Oldham smelled marijuana coming from the right side of the vehicle before unlocking the toolbox, and that "[t]here was no challenge to Officer Oldham's expertise or ability to recognize the smell of fresh marijuana."

{¶12} Under these circumstances, we are compelled to sustain Lindow's assignment of error as it pertains to the trial court's findings of fact. The sequence of events was critical to the trial court's probable cause determination in this case. Officer Oldham's testimony at the suppression hearing does not support the trial court's finding that he detected the odor of marijuana prior to unlocking the tool box. As noted above, Officer Oldham responded in the negative when asked if he smelled the odor of fresh marijuana prior to unlocking the toolbox. Officer Oldham's uncontroverted testimony was that he used Lindow's key to open the toolbox in order to inventory the vehicle, and it was at that time that he detected the odor of fresh marijuana. Because the evidence introduced at the suppression hearing does not support the trial court's findings, we must conclude that the court erred by denying the motion to suppress. *Hendrix* at ¶ 15.[2] While Lindow raises additional arguments pertaining to the scope of the inventory search, alleged violations of departmental policy, and alleged *Miranda* violations, we cannot reach those arguments at this time because "[t]he court's conclusion might have been otherwise if based upon factually accurate findings." *Hendrix*, 2013-Ohio-2430, ¶ 14, citing *State v. Liscoe*, 9th Dist. Summit No. 25441, 2011-Ohio-1054, ¶ 14.

{¶13} The first assignment of error is sustained.

---

[2] In its merit brief, the State suggests that defense counsel admitted during closing arguments that there was probable cause for the search by arguing that police should have obtained a warrant for the toolbox. We reject this contention as the transcript indicates that defense counsel offered this argument in the alternative to his central position that there was no basis to unlock the toolbox during the search.

**ASSIGNMENT OF ERROR II**

LINDOW'S CONVICTIONS FOR TRAFFICKING IN MARIJUANA, DRIVING UNDER SUSPENSION, AND POSSESSION OF MARIJUANA WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶14}  In his second assignment of error, Lindow contends that his convictions were not supported by sufficient evidence.  This Court disagrees.

{¶15}  While our resolution of Lindow's first assignment of error mandates reversal, we must address his remaining assignments of error as they pertain to his driving under suspension conviction because that charge was unaffected by the motion to suppress.  We are also compelled to address Lindow's sufficiency challenges to his convictions for trafficking in marijuana and possession of marijuana because of his constitutional protection against double jeopardy.  *State v. Lovejoy*, 79 Ohio St.3d 440, 449-450 (1997).  In determining whether the evidence presented before the trial court was sufficient to sustain a conviction, a reviewing court must view the evidence in the light most favorable to the State.  *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway*, 9th Dist. Summit No. 19752, 2001 WL 81257 (Jan. 31, 2001), quoting *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus.

{¶16}  The test for sufficiency requires a determination of whether the State has met its burden of production at trial.  *State v. Walker*, 9th Dist. Summit No. 20559, 2001 WL 1581570

(Dec. 12, 2001), *2; *see also State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

**Trafficking in Marijuana**

{¶17} Lindow was convicted of trafficking in marijuana in violation of R.C. 2925.03(A)(C)(3). R.C. 2925.03(A)(2) states, "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.03(C)(3) states, "If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of trafficking in marihuana."

{¶18} Lindow argues that his trafficking conviction was not supported by sufficient evidence because the State failed to demonstrate that 163 grams of substance alleged to be marijuana that was found in his vehicle was actually marijuana. Lindow further asserts that the officers involved had very little experience in trafficking investigations and that there was no evidence, other than the weight of the marijuana, that Lindow was involved in trafficking.

{¶19} A review of the trial transcript reveals that Officer Oldham discovered numerous containers of marijuana during the inventory of Lindow's truck. Officer Childers testified that 166 grams of marijuana were found in the vehicle. Though Lindow emphasizes that the State only analyzed a portion of the marijuana found in his truck, this Court has consistently held that scientific analysis of a random sampling of a substance from a bulk quantity is sufficient to support an inference that all of the substance is the same drug, as long as the defendant offers no rebuttal. *State v. Garnett*, 9th Dist. Medina No. 12CA0088-M, 2013-Ohio-4971, ¶ 7, citing *State*

*v. Mathis*, 9th Dist. Summit No. 23507, 2007-Ohio-2345, ¶ 12 (involving scientific analysis of a sample from a bulk amount of marijuana). "We have never set requirements on the percentage of a substance that must be analyzed to support such an inference, as it depends on the facts and circumstances of each case." *Garnett* at ¶ 7. Moreover, the State introduced evidence that the manner in which the marijuana had been separated was indicative of drug dealing. Detective Erik Roach received his marijuana identification certification after attending classes in 2008, and he currently serves on the Summit County Drug Unit. Detective Roach testified that the manner in which drugs are stored is an important factor in differentiating between drug trafficking and mere drug use. In this case, most of the marijuana found in the truck had been sorted into numerous portable containers, with four containers holding 28 grams apiece, and three containers holding 14 grams apiece. Detective Roach explained that a typical "personal use" amount of marijuana is approximately one ounce, but that marijuana users generally keep all of their marijuana in one bag as opposed to separating the drug into separate parcels. This evidence, when construed in the light most favorable to the State, was sufficient to demonstrate that Lindow was involved in trafficking marijuana.

### Possession of Marijuana

{¶20} Lindow was also convicted of possession of marijuana in violation of R.C. 2925.11(A)(C)(3). R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(C)(3) states, "[i]f the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana." R.C. 2925.11(C)(3)(b) states that "[i]f the amount of the drug

involved equals or exceeds one hundred grams but is less than two hundred grams, possession of marihuana is a misdemeanor of the fourth degree."

{¶21} Lindow asserts that the State failed to present sufficient evidence that he was in possession of enough marijuana to be convicted of a fourth-degree misdemeanor. In support of this position, Lindow asserts that while the State arguably demonstrated that he was in possession of between 3 and 12 grams of marijuana, it failed to present test results or expert testimony to demonstrate that the remaining substance found in the vehicle was, in fact, marijuana.

{¶22} Officer Childers testified that police discovered 166 grams of marijuana in Lindow's truck. Detective Roach testified he tested a sample from a three-gram bag found in the truck and determined that it was marijuana. As noted above, this Court has long held that "[c]hemical analysis of a random sample of a quantity of drugs is enough to allow a reasonable inference that all of the [substance] contained the same drug [], if no rebuttal is offered." *State v. Dixon*, 9th Dist. Medina Nos. 11CA0065-M, 11CA0087-M, 2012-Ohio-4428, ¶ 23, quoting *State v. Rush*, 9th Dist. Lorain Nos. 3809, 3818, 1985 WL 11030 (July 31, 1985). In this case, Lindow did not offer any rebuttal evidence regarding the composition of the marijuana discovered in his vehicle. Thus, as the evidence presented by the State was enough to support a reasonable inference that Lindow was in possession of an amount of marijuana that exceeded one hundred grams but was less than two hundred grams, his conviction for possession of marijuana as a misdemeanor of the fourth degree was supported by sufficient evidence.

**Driving Under Suspension**

{¶23} Lindow was convicted of driving under suspension in violation of R.C. 4510.11, which prohibits a person whose driver's license has been suspended under any provision of the

Revised Code from driving on public roads or highways. Lindow admits that his driver's license was suspended for noncompliance at the time of the stop, but he contends that R.C. 4510.11 was a legally deficient charge because the statute specifically excludes noncompliance suspensions.

**{¶24}** Officer Childers testified that he initiated a traffic stop of Lindow's vehicle because the computer inside his cruiser indicated that Lindow's license had been suspended. During his testimony, the State introduced a certified copy of Lindow's Ohio BMV record. Officer Childers testified that the driving record stated that Lindow's license had been suspended on May 1, 2013, meaning that he was under suspension on the date of the traffic stop. At the close of the State's case, defense counsel specifically excluded the traffic charge from his Crim.R. 29 motion, stating, "When it comes to driving under suspension in count 2, I do believe that the state has met its burden, there is enough information for the jury to consider, so I'm not even going to address that in my rule 29." Subsequently, Lindow took the stand to testify on his own behalf and made several concessions in an apparent attempt to bolster his credibility. Though he strongly denied being involved in drug trafficking, Lindow acknowledged that he was guilty of possessing marijuana for personal use and driving under suspension. When defense counsel specifically asked if Lindow had a suspended license in Ohio, Lindow responded, "Yes. It was suspended in Ohio." Defense counsel then stated, "All right. So tell the jury, are you guilty or not guilty of driving under suspe[nsion] in Ohio?" Lindow responded, "I was driving in Ohio without a license when I was pulled over." Given the aforementioned evidence, it is apparent that Lindow's conviction for driving under suspension was supported by sufficient evidence.

{¶25} As Lindow's convictions for trafficking in marijuana, possession of marijuana, and driving under suspension were supported by sufficient evidence, the second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

LINDOW'S CONVICTIONS FOR TRAFFICKING IN MARIJUANA AND DRIVING UNDER SUSPENSION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

## ASSIGNMENT OF ERROR IV

LINDOW WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶26} In his final two assignments of error, Lindow raises challenges pertaining to the weight of the evidence and the performance of trial counsel. Though Lindow makes arguments implicating all three of his convictions, we will limit our analysis to his conviction for driving under suspension. As our resolution of the first and second assignments of error is dispositive of this appeal as it pertains to Lindow's convictions for trafficking in marijuana and possession of marijuana, we decline to address Lindow's arguments relating to those offenses as they are rendered moot. *See* App.R. 12(A)(1)(c).

**Weight of the Evidence**

{¶27} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence

and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

**{¶28}** In support of his manifest weight challenge to his driving under suspension conviction, Lindow offers an abbreviated version of the sufficiency argument set forth above. "This is not appropriate, as sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Lindow acknowledges his admission to driving under suspension at trial but maintains that the State made a charging error. Though he couches this argument in terms of manifest weight, "it does not appear that he asks this Court to weigh any evidence or to consider the credibility of the witnesses when resolving any conflicts of the evidence." *Vicente-Colon* at ¶ 20. Under these circumstances, where Lindow admitted during his testimony that he was guilty of driving with a suspended license, we are compelled to reject the notion that this is the exceptional case where the evidence presented at trial weighs heavily against conviction. *See Otten* at 340.

**{¶29}** The third assignment of error is overruled.

**Ineffective Assistance of Counsel**

In order to prevail on a claim of ineffective assistance of counsel, Lindow must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice

arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Thus, a two-prong test is necessary to examine such claims. First, Lindow must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland*, 466 U.S. at 687. Second, Lindow must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith*, 79 Ohio St.3d at 534.

{¶30} It is well-settled that, "debatable trial tactics do not give rise to a claim for ineffective assistance of counsel." *State v. Hoehn,* 9th Dist. Medina No. 03CA0076-M, 2004-Ohio-1419, ¶ 45, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). Even if this Court questions trial counsel's strategic decisions, we must defer to his or her judgment. *Clayton,* 62 Ohio St.2d at 49. The Ohio Supreme Court has stated:

> "We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practices in the defense field." * * * Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client.

*Clayton*, 62 Ohio St.2d. at 49, quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶31} Lindow asserts that his noncompliance suspension was not an arrestable offense and that trial counsel was ineffective for conceding at the suppression hearing that Lindow could be arrested for that offense. Though Lindow claims that the officers had no basis to take him into custody, he does not explain how the outcome of the suppression hearing would have been

different had trial counsel not made that concession. As Lindow does not explain how he was prejudiced by trial counsel's concession, he cannot prevail on his argument. *State v. Kuhn*, 9th Dist. Lorain No. 05CA008859, 2006-Ohio-4416, ¶ 11 (holding that failure to raise an issue in a motion to suppress constitutes ineffective assistance of counsel only when the appellant demonstrates that the motion would have been granted).

{¶32} Lindow further asserts that trial counsel was ineffective for failing to contest the validity of the driving under suspension charge at trial, particularly with respect to trial counsel's decision to concede that the State presented sufficient evidence on that offense when moving for acquittal pursuant to Crim.R. 29. It appears that trial counsel's decision to make a concession on the driving under suspension charge was part of a trial strategy aimed at more effectively contesting the remaining charges. In addition to the driving under suspension charge, Lindow was charged with three drug-related offenses, one of which was a felony. Though trial counsel purposefully exempted the driving under suspension charge from his Crim.R. 29 motion, he successfully moved for acquittal on the count of possession of drug paraphernalia. Subsequently, when Lindow took the stand in his own defense, trial counsel engaged in a line of questioning where Lindow conceded that he was guilty of the two misdemeanors but vehemently denied being involved in felony drug trafficking. While this strategy aimed at bolstering Lindow's credibility did not ultimately prove to be effective with respect to the trafficking and possession charges, we cannot say that trial counsel breached a duty to his client and undermined the integrity of the proceeding.

{¶33} Lindow's fourth assignment of error is overruled.

III.

**{¶34}** Lindow's first assignment of error is sustained. The second assignment of error is overruled. The third and fourth assignments of error are overruled as they relate to Lindow's conviction for driving under suspension. This Court declines to address the third and fourth assignments of error as they pertain to Lindow's convictions for trafficking in marijuana and possession of marijuana as those arguments are moot. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

JEREMY A. VEILLETTE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.