[Cite as *State v. Knight*, 2012-Ohio-5816.]

STATE OF OHIO            )                IN THE COURT OF APPEALS
                        )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN         )

STATE OF OHIO                             C.A. No.      11CA010034

    Appellee

    v.                                   APPEAL FROM JUDGMENT
                                         ENTERED IN THE
SAMUEL KNIGHT                            LORAIN MUNICIPAL COURT
                                         COUNTY OF LORAIN, OHIO
    Appellant                         CASE No.     CRB1003883

DECISION AND JOURNAL ENTRY

Dated: December 10, 2012

DICKINSON, Judge.

## INTRODUCTION

{¶1}    Samuel Knight represented himself in a trial to the bench in Lorain Municipal Court in 2011.  The trial court found him guilty of petty theft and sentenced him to pay a fine and serve 180 days in jail, although it suspended 150 days conditioned on one year of "monitored time."  Mr. Knight has appealed.  This Court affirms the conviction because it is supported by sufficient evidence and is not against the manifest weight of the evidence.  We modify his sentence to vacate the imposition of a term of incarceration because the municipal court failed to obtain a voluntary, knowing, and intelligent waiver of his right to counsel.

## BACKGROUND

{¶2}    At a bench trial with Mr. Knight acting as his own counsel, Kelman Fligner testified that he has worked at Fligner's Supermarket in Lorain since 1949.  He testified that he works in the office and as a cashier.  According to Mr. Fligner, he was working at a register on

December 12, 2010, when he saw Mr. Knight pushing a shopping cart with a $75 box of spareribs across it. Mr. Knight was pushing the cart toward the front door when Mr. Fligner stopped him. Mr. Fligner testified that there was a "paid sticker" on the box indicating that someone had purchased the meat, but no employee of the market had signed the sticker, which was against company policy.

{¶3} Mr. Fligner stopped Mr. Knight and asked him where he was taking the box of meat. He testified that Mr. Knight told him that he was headed out to the parking lot to give it to the customer who had purchased it. Mr. Knight explained that the customer had returned for it because she had not had enough space in her car to load it initially. Mr. Knight told Mr. Fligner that he had volunteered to store the meat in the produce cooler until the customer could return for it. Mr. Fligner refused to allow Mr. Knight to take the meat outside without a receipt. According to Mr. Fligner, Mr. Knight left the meat in the store while he went outside for a few minutes. When he returned, Mr. Knight told Mr. Fligner that the woman must have left the receipt at home. Mr. Fligner told Mr. Knight that the customer could not have the meat without a receipt. About 20 minutes later, Mr. Knight told Mr. Fligner that "[t]he lady called and said she can't find her receipt." A couple of hours later, when the store manager asked Mr. Knight if he could look at Mr. Knight's cell phone to see evidence that a customer had called about the ribs, Mr. Knight said that he had deleted it because it was a restricted number. Mr. Fligner testified that he was not aware of other instances of employees giving customers their personal cell phone numbers for use in contacting the market.

{¶4} The general manager of Fligner's, Robert Kritz, testified that he searched the store's computer system for evidence that anyone had purchased a box of spareribs that day. He said that he searched for the exact price of the spareribs and learned that there had not been any

transactions in that amount on December 12. He also testified that he never received any complaints from a customer regarding a missing box of spareribs. The trial court found Mr. Knight guilty of theft under Section 2913.02(A)(1) of the Ohio Revised Code. It sentenced him to pay a fine of $300 plus court costs and serve 180 days in jail with 150 days suspended on the condition that he serve one year of "monitored time." Mr. Knight has appealed.

## SUFFICIENCY& MANIFEST WEIGHT

{¶5} Mr. Knight's first assignment of error challenges both the sufficiency and weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of his guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). If a defendant argues that his conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986).

{¶6} Under Section 2913.02(A) of the Ohio Revised Code, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) [w]ithout the consent of the owner or person authorized to give consent; (2) [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) [b]y deception; (4) [b]y threat; (5) [b]y

intimidation." The complaint alleged that Mr. Knight had taken control of the merchandise without consent under subsection (A)(1) of the statute. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Whoever violates . . . [S]ection [2913.02] is guilty of theft." R.C. 2913.02(B)(1).

{¶7} Mr. Knight has argued that the State failed to present sufficient evidence that he committed a theft. He has argued that, as an employee, he had consent to handle the merchandise and, because he never left the store with it, there was no evidence that he stole it. Essentially, he has argued that the State failed to prove he intended to steal it. "Intent need not be proved by direct evidence." *Stow v. Paster*, 9th Dist. No. 25966, 2012-Ohio-2746, ¶ 7. Intent "can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances[.]" *Id.* (quoting *In re Washington*, 81 Ohio St. 3d 337, 340 (1998)). "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.* (quoting *State v. Tran*, 9th Dist. No. 22911, 2006–Ohio–4349, ¶ 13). "Circumstantial evidence has the same probative value as direct evidence." *Id.* (citing *State v. Jenks*, 61 Ohio St. 3d 259, paragraph one of the syllabus (1991)).

{¶8} The State presented sufficient evidence that Mr. Knight exerted control over the merchandise by loading it into a cart and pushing it to the front of the store with the intent to deprive the owner of it. There was evidence that, when questioned, Mr. Knight told Mr. Fligner that he was headed out to the parking lot to deliver the meat to a customer who had purchased it

earlier in the day. There was significant circumstantial evidence that the customer Mr. Knight referred to did not exist. There was evidence that the "paid" sticker on the box was not signed by any employee, indicating to store management that no authorized employee placed the sticker on the box. Further, the statute does not require that Mr. Knight cross into the parking lot with the merchandise before he has, "with purpose to deprive the owner . . . knowingly obtain[ed] or exert[ed] control over . . . the property [of another] . . . [w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1). This Court has previously held that a person may be convicted of theft in a shoplifting situation despite not having exited the store with the merchandise. *State v. Paster*, 9th Dist. No. 25966, 2012-Ohio-2746, ¶ 8, 11.

{¶9} It can be inferred that, when Mr. Fligner stopped him, Mr. Knight was in the process of leaving the building with $75 worth of merchandise that belonged to Fligner's Market. Contrary to Mr. Knight's argument, the fact that he did not succeed in leaving the building with the merchandise does not mean that he did not commit a theft offense. There was sufficient evidence for the trier of fact to find that Mr. Knight knowingly obtained the merchandise without the consent of the owner with a purpose to deprive the owner of it. *See* R.C. 2913.02(A)(1). The evidence, construed in the light most favorable to the State, indicated that Mr. Knight intended to permanently withhold the property from Fligner's Market, which was the rightful owner of it. *See* R.C. 2913.01(C)(1) (defining "[d]eprive").

{¶10} The second part of Mr. Knight's first assignment of error is that his theft conviction is not based on sufficient evidence because the trial court failed to prove that he exerted control over the merchandise without the consent of the owner as he had been charged. He has argued that there may have been evidence of theft by deception, but he was not charged under that subsection of the statute. Under Section 2913.02(A)(1), a person is forbidden to

knowingly exert control over the property of another, with purpose to deprive the owner of it, "[w]ithout the consent of the owner or person authorized to give consent[.]" Mr. Knight has pointed to evidence that he initially obtained the meat from the general manager by telling him that a customer had requested it. There was some evidence that he may have stored it for a time in a produce cooler before going to retrieve it and move it up front where he met Mr. Fligner. Mr. Knight has argued that there was insufficient evidence to support his conviction because "there was no evidence that he obtained the property without consent."

{¶11} Although Mr. Knight may have obtained the general manager's consent to take temporary physical possession of the meat in order to deliver it to a customer waiting at a register, Mr. Knight took the meat and stowed it away in a cooler. Later, when Mr. Knight started to leave the building with the merchandise, Mr. Fligner made it clear that Mr. Knight did not have permission to bypass the registers and take the ribs out of the building. There was sufficient evidence that Mr. Fligner, as an employee of Fligner's Market, was authorized to give consent to Mr. Knight's control of the merchandise. According to Mr. Fligner's testimony, Mr. Knight did not have consent from any authorized personnel to take the merchandise to the parking lot. Regardless of the evidence that may have supported a theft by deception conviction, the State presented sufficient evidence that Mr. Knight did not have the owner's consent to exert control over the box of ribs with purpose to permanently deprive the owner of it. Customers in a supermarket are implicitly permitted to carry merchandise around the store before purchasing it, but prior to purchase, the store has not relinquished any of its control over the item. *See State v. Phillips*, 84 Ohio App. 3d 836, 841 (11th Dist. 1993). The evidence supports a conviction under Section 2913.02(A)(1) because Mr. Fligner caught Mr. Knight in the act of stealing the ribs. Despite some limited consent from the manager to transport the ribs to the registers, when Mr.

Fligner caught him, Mr. Knight admitted that he was taking the ribs outside and attempted to deceive Mr. Fligner in order to obtain consent to do so. Mr. Fligner withheld that consent. Mr. Fligner's testimony indicated that Mr. Knight did not have consent to exert control over the merchandise in the manner that he was doing when Mr. Fligner caught him. Viewed in the light most favorable to the State, there was sufficient evidence to support Mr. Knight's theft conviction.

{¶12} To the extent that Mr. Knight's argument is aimed at the manifest weight of the evidence, there was no evidence that Mr. Knight had intended to pay for the merchandise. He admitted that he was on his way out the door with it and his defense, when questioned, was that the merchandise had previously been purchased. The trier of fact was not required to believe the explanation that Mr. Knight offered for his behavior at the scene. The trier of fact was entitled to believe that, when stopped by store personnel, Mr. Knight was leaving the store with merchandise that had not been purchased. This Court cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding Mr. Knight guilty of theft. His first assignment of error is overruled.

WAIVER OF COUNSEL

{¶13} Mr. Knight's second assignment of error is that the trial court violated his right to counsel by allowing him to represent himself at trial without advising him of the consequences and obtaining a proper waiver of the right to counsel. His third assignment of error is that the trial court incorrectly imposed a term of incarceration after Mr. Knight represented himself at trial without waiving his right to counsel. The State of Ohio has not filed a brief in this matter. Therefore, this Court may accept Mr. Knight's statement of facts and issues as correct and

reverse the judgment if Mr. Knight's brief reasonably appears to sustain that action. App. R. 18(C).

{¶14} The municipal court judge found Mr. Knight guilty of theft of just over $75 of merchandise, a misdemeanor of the first degree and a petty offense under Rule 2(D) of the Ohio Rules of Criminal Procedure. R.C. 2913.02(B)(2); 2929.24(A)(1); Crim. R. 2(C), (D). "[T]he Sixth Amendment right to counsel extends to misdemeanor cases that could result in the imposition of a jail sentence." *State v. Caynor*, 142 Ohio App. 3d 424, 427-28 (7th Dist. 2001) (citing *City of Garfield Heights v. Brewer*, 17 Ohio App. 3d 216, 217 (8th Dist. 1984)). Under Rule 44(B) of the Ohio Rules of Criminal Procedure, "[w]hen a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." "Waiver of counsel shall be in open court and the advice and wavier shall be recorded as provided in Rule 22." Crim. R. 44(C). "In petty offense cases, all waivers of counsel required by Rule 44(B) shall be recorded[.]" Crim. R. 22. "Courts indulge every reasonable presumption against a waiver of fundamental constitutional rights." *Caynor*, 142 Ohio App. 3d at 428. "A knowing, voluntary, and intelligent waiver cannot be presumed from a silent record." *State v. Baker*, 9th Dist. No. 24331, 2009-Ohio-111, ¶ 7 (citing *State v. Brooke*, 113 Ohio St. 3d 199, 2007-Ohio-1533, ¶ 25). Further, "'unable to obtain counsel' [in Criminal Rule 44(B)] is properly read as an indication that the appointment of counsel by the trial court is not to be limited exclusively to cases where the defendant is indigent. Even [if] an accused is financially able, in whole or in part, to obtain the assistance of counsel, but is unable to do so for whatever reason, appointed counsel must be provided, or no sentence of incarceration may be

imposed." *State v. Henley*, 138 Ohio App. 3d 209, 219-20 (9th Dist. 2000) (quoting *State v. Domers*, 9th Dist. No. 2535, 1990 WL 77233, *3-4 (June 6, 1990)).

{¶15} The only evidence in the record pertaining to the right to counsel is a journal entry dated January 11, 2011. In that entry, the trial court indicated, by checking a box at the top of the form, that Mr. Knight "appeared in court without counsel." The words "without counsel" are in bold text. The next line of the form presents a box next to the words "[r]ights explained and a written waiver executed." The box next to those words is not checked. The State did not respond to Mr. Knight's appellate brief and a review of the record has not revealed any evidence that Mr. Knight waived his right to counsel or was ever advised of the "dangers and disadvantages of self-representation." *State v. Dowey*, 9th Dist. No. 25963, 2012-Ohio-4915, ¶ 3 (quoting *State v. Hunter*, 9th Dist. No. 10CA009903, 2012-Ohio-1121, ¶ 14). Thus, we conclude that the trial court violated Mr. Knight's Sixth Amendment right to counsel when it proceeded to trial without obtaining a voluntary, knowing, and intelligent waiver of that right.

{¶16} "In *State v. Haag*, 9th Dist. No. 7983, 1976 WL 188795 (June 9, 1976), this Court held that '[if] a defendant (1) is convicted of a petty offense, and (2) an imprisonment penalty is imposed, and (3) he is not represented by an attorney at his trial, the imprisonment portion of the sentence will be vacated, unless a record is made (in accordance with Crim. R. 22 and Crim. R. 44) which affirmatively demonstrates . . . that the defendant . . . knowingly waived his Sixth Amendment right to counsel.'" *State v. Dowey*, 9th Dist. No. 25963, 2012-Ohio-4915, ¶ 6 (citing *Haag*, 1976 WL 188795 at *3). In accordance with *Haag* and *Dowey*, we modify Mr. Knight's sentence by vacating the part imposing 180 days of jail time. *Haag*, 1976 WL 188795 at *3; *State v. Henley*, 138 Ohio App. 3d 209, 220 (9th Dist. 2000). Mr. Knight's second and third assignments of error are sustained.

CONCLUSION

{¶17} Mr. Knight's first assignment of error is overruled because there is sufficient evidence to support his conviction and the conviction is not against the manifest weight of the evidence. His second assignment of error is sustained because the municipal court failed to obtain a waiver of the Sixth Amendment right to counsel before proceeding to trial with Mr. Knight representing himself. His third assignment of error is sustained because the municipal court imposed a jail sentence after Mr. Knight had represented himself at trial in the absence of any proof of waiver of the right to counsel. Mr. Knight's jail sentence is vacated, and the judgment of the Lorain Municipal Court is affirmed as so modified.

Judgment affirmed as modified.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant.

JEFFREY STEVEN SZABO, Prosecuting Attorney, for Appellee.