[Cite as *State v. Frederick*, 2020-Ohio-714.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

ANTHONY A. FREDERICK

    Appellant

C.A. No.    18AP0005

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNT MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2017 CR-B 001291

DECISION AND JOURNAL ENTRY

Dated: March 2, 2020

CARR, Judge.

{¶1} Appellant, Anthony Frederick, appeals the judgment of the Wayne County Municipal Court. This Court affirms in part, reverses in part, and remands.

I.

{¶2} This matter arises out of a dispute between Frederick and his wife, S.F., that occurred on July 25, 2017. Law enforcement was dispatched to the Frederick residence on Friendsville Road in Wayne County, Ohio, after S.F. called 9-1-1. As he was making his way to the scene, Lieutenant Ryan Koster of the Wayne County Sheriff's Office initiated a traffic stop of a vehicle where Frederick was a passenger. Frederick was placed under arrest shortly thereafter. As a result of the incident, Frederick was charged with one count of domestic violence in violation of R.C. 2919.25(A), a first degree misdemeanor, as well as one count of disorderly conduct in violation of R.C. 2917.11(A)(1), a fourth degree misdemeanor. He pleaded not guilty to the charges at arraignment and an assistant public defender was appointed on his

behalf. Thereafter, Frederick was also charged with one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a second degree misdemeanor. He pleaded not guilty to that charge as well.

{¶3} The assistant public defender initially appointed to represent Frederick filed a motion to withdraw, citing a breakdown in communication. A second attorney was appointed to represent Frederick. When the second attorney filed a motion to withdraw, the trial court held a hearing on the motion and ultimately appointed the second attorney to act as stand-by counsel. The matter proceeded to a jury trial. Frederick was found not guilty of domestic violence. The jury found Frederick guilty of disorderly conduct but did not find that there was persistence, rendering the offense a minor misdemeanor. The jury also found Frederick guilty of criminal damaging or endangering.

{¶4} The trial court placed Frederick on community control for a period of 12 months and imposed a total of $400 in fines. While on community control, Frederick was ordered to do 25 hours of community service, complete anger management counseling, and have no contact with S.F. or her property. The trial court further ordered that Frederick was to be placed on GPS monitoring. The trial court advised Frederick that if he violated any provision of the order, he may be brought back before the trial court for resentencing and could be subjected to 90 days in jail, a fine not to exceed $500, up to 175 additional hours of community service, and an additional period of community control under more restrictive conditions.

{¶5} On appeal, Frederick raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR
WHEN IT PERMITTED DEFENDANT TO PROCEED PRO SE WITHOUT

SUBSTANTIALLY COMPLYING WITH CRIM.R. 44(B), AND IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶6} In his first assignment of error, Frederick contends that the trial court committed reversible error when it failed to conduct an adequate colloquy prior to allowing Frederick to proceed pro se. This Court agrees but we must also address the State's contention that the adequacy of the colloquy was irrelevant in this case because Frederick did not have a right to an attorney.

{¶7} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides criminal defendants with the fundamental right to counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 339-340 (1963).

{¶8} The United States Supreme Court has held that a defendant cannot be imprisoned for any type of offense unless he was represented by counsel at trial or he made a knowing, intelligent, and voluntary waiver of his right to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). However, under the United States Constitution, a defendant does not have a right to counsel simply because imprisonment is a possible penalty under the law. *Scott v. Illinois*, 440 U.S. 367, 369 (1979). Instead, a defendant has a right to counsel under circumstances where a term of imprisonment is actually imposed. *Id.* at 373-374. While the United States Supreme Court extends the right to counsel upon actual incarceration, the Supreme Court of Ohio has recognized that "states have the ability under their own constitutions to grant greater rights than those provided by the federal Constitution." *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, ¶ 23. The Supreme Court has noted that, in Ohio, the possibility of confinement has been the determining factor with respect to whether counsel is necessary in a particular case. *Bode* at ¶ 24, citing *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970. This Court has stated that

the right to counsel "extends to misdemeanor cases that could result in the imposition of a jail sentence." (Internal quotations and citations omitted.) *State v. Knight*, 9th Dist. Lorain No. 11CA010034, 2012-Ohio-5816, ¶ 14. "[T]he mere possibility of confinement determines whether counsel is necessary in a particular case[.]" *State v. Ott*, 9th Dist. Summit No. 27953, 2017-Ohio-521, ¶ 7, citing *Bode* at ¶ 24.

{¶9} Crim.R. 44(B) provides that "[w]here a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." In turn, Crim.R. 44(C) states, in part, "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Crim.R. 22."

**Background**

{¶10} The trial court held a hearing on defense counsel's motion to withdraw on January 11, 2018. At the outset of the hearing, defense counsel explained that when he contacted Frederick to discuss the status of plea negotiations, Frederick indicated that he did not want defense counsel to represent him and that it was his wish to have the initial public defender reappointed. Prior to allowing Frederick to make a statement on the record, the trial court reminded Frederick that his initial public defender was permitted to withdraw because communication had "broken down irretrievably." Frederick explained that the breakdown in communication occurred when initial counsel filed a speedy trial waiver without adequately discussing that issue with Frederick. In response, the trial court noted that reappointing initial counsel would be complicated for a number of reasons. The trial court further emphasized that it

saw no reason that current defense counsel could not provide adequate representation. Frederick then stated, "Well, I mean I, there is really, I mean I can go forward on my own as pro se."

{¶11} While the trial court acknowledged the option of pro se representation, the court reminded Frederick that it would be preferable for him to be represented because he was charged with a "serious offense." Frederick expressed a desire to get the case "over and done with" because the case was likely "going to an appeals court[.]" The trial court again stated that it saw no reason that current defense counsel could not provide adequate representation. At that point, Frederick stated, "I will continue as pro se. I don't need to waste no more time of [defense counsel], you know, to represent me in this case. I will go forward as pro se." The trial court then asked defense counsel if he would be willing to serve as stand-by counsel. Defense counsel responded in the affirmative. The trial court then provided Frederick with a brief explanation of the role of stand-by counsel.

{¶12} Frederick expressed reservations about whether the presence of stand-by counsel would prohibit him from communicating directly with the assistant prosecutor during plea negotiations. The State noted on the record that its plea offer would remain open until the end of the day and that it would be willing to discuss the offer with Frederick. The trial court then stated that it would keep defense counsel in place until the end of the day to assist Frederick in assessing the terms of the plea offer. When Frederick indicated that he understood, the trial court continued, "[a]fter today, I am going to change [defense counsel's] status to stand-by counsel." The trial court further reminded Frederick that if he was not able to reach an agreement, the matter would proceed to trial relatively quickly because he had revoked his speedy trial waiver.

{¶13} The trial court adjourned the hearing without any further inquiry regarding Frederick's waiver of his right to counsel. The trial court issued a journal entry appointing

defense counsel as stand-by counsel, effective January 12, 2018. When the parties were unable to enter in a plea agreement, the matter proceeded to trial a week later with Frederick representing himself and former defense counsel serving as stand-by counsel.

## Discussion

{¶14} Frederick argues that the trial court failed to engage in a colloquy to determine whether his waiver of his right to counsel was knowing, intelligent, and voluntary. Frederick stresses that the trial court neither inquired as to whether he understood the nature of the proceedings, nor advised him of the dangers of self-representation.

{¶15} In response, the State maintains that Frederick's waiver of his right to counsel was valid because he was clear and unequivocal in expressing his desire to proceed pro se. The State points to several of the filings that Frederick made while he was represented by counsel in support of the conclusion that Frederick had already abandoned the notion of legal representation. The State further argues in the alternative that even if this Court determines that his waiver was invalid, his convictions should nonetheless be affirmed because no prison term was imposed in this case.

{¶16} Under the circumstances of this case, we are compelled to sustain Frederick's assignment of error. The trial court showed great patience in this case while attempting to accommodate the fluidity of Frederick's position with respect to his representation. When Frederick ultimately expressed a desire to represent himself, the trial court did not engage in any type of meaningful colloquy to determine whether Frederick was aware of the dangers of proceeding without the benefit of counsel. The fact that Frederick expressed a desire to represent himself and made a number of filings on his own behalf does not alter the requirement of the trial court to engage in a colloquy in order for his waiver to be knowing, intelligent, and voluntary.

*See State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 54 ("For a petty offense, voluntary and knowing waiver may be shown through the court's colloquy with the defendant."). As Frederick faced potentially significant penalties in this case, including the possibility of incarceration, the trial court erred when it permitted Frederick to represent himself without validly waiving his right to counsel.

{¶17} The first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

THE STATE VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT WHEN IT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE PROPERTY OWNER DID NOT CONSENT TO THE PROPERTY DAMAGE FOR THE CRIME OF CRIMINAL DAMAGING PURSUANT TO R.C. 2909.06(A).

### ASSIGNMENT OF ERROR III

THE CONVICTION OF DISORDERLY CONDUCT WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION ON THAT CHARGE.

{¶18} In his second assignment of error, Frederick contends that his conviction for criminal damaging or endangering was not supported by sufficient evidence because the State failed to prove that the owner of the vehicle did not consent to the events that occurred on July 25, 2017. In his third assignment of error, Frederick maintains that the trial court should have granted his Crim.R. 29 motion with respect to the disorderly conduct charge because there was no evidence that he caused inconvenience, annoyance, or alarm. This Court disagrees with both arguments.

{¶19} While our resolution of Frederick's first assignment of error mandates reversal, we are compelled to address his sufficiency challenges due to the constitutional protection against double jeopardy. *State v. Lindow*, 9th Dist. Summit No. 27417, 2016-Ohio-913, ¶ 15.

{¶20} Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶21} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶22} Frederick was convicted of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), which states, "[n]o person shall [knowingly, by any means] cause, or create a substantial risk of physical harm to any property of another without the other person's consent[.]" Frederick was also convicted of disorderly conduct in violation of R.C. 2917.11(A)(1), which states, "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"

## Background

{¶23} The State presented evidence at trial that supported the following narrative. On July 25, 2017, S.F. called 9-1-1 and reported that her husband, Frederick, had just attacked her and put his hands on her throat. During the call, S.F. indicated that Frederick had grabbed a knife

and slashed the tires on her vehicle. Frederick can be heard yelling in the background of the recording. S.F. further indicated that she was outside of her house and that Frederick was preventing her from entering the house where her children were located. S.F. expressed concern that she would be cornered upon reentry. The children subsequently came out of the house and S.F. attempted to calm them down. S.F. explained that Frederick's uncle, D.C., was also at the house and witnessed the incident. Near the end of the call, S.F. explained that D.C. and Frederick had left the property in a minivan. S.F. provided the make and model of the vehicle.

{¶24} Lieutenant Ryan Koster initiated a traffic stop of the minivan. D.C. was driving the vehicle and Frederick was in the passenger seat. Lieutenant Koster testified that Frederick seemed to understand that the traffic stop was related to what had just transpired at his residence. Frederick told Lieutenant Koster that the situation at the residence was triggered when the dog had an accident, and then a dispute between Frederick and S.F. ensued. While Lieutenant Koster noticed scratches on the side of Frederick's neck, Frederick did not provide a clear narrative as to how the physical altercation unfolded. Deputy Steven Browning arrived on the scene of the traffic stop and stayed briefly before proceeding to make contact with S.F. When Deputy Browning arrived at the Frederick residence, he found S.F. to be "[a]ngry" and "fearful." Deputy Browning took photographs of the slashed tires on the passenger side of S.F.'s vehicle. The photographs, which were introduced as exhibits at trial, showed that the tires were flat. Lieutenant Koster ultimately made his way to the residence as well. S.F. provided a more detailed account than Frederick regarding what had transpired during the incident. After discussing the situation with S.F., Lieutenant Koster and Deputy Browning placed Frederick under arrest.

**Criminal Damaging or Endangering**

{¶25} In support of his second assignment of error, Frederick contends that the State failed to demonstrate that the owner of the vehicle did not consent to Frederick's actions on July 25, 2017. Frederick argues that there was conflicting evidence at trial regarding who owned the vehicle and that the State failed to demonstrate that the owner of the vehicle did not consent to the damage.

{¶26} Fredrick's argument is without merit. S.F. indicated during the 9-1-1 call that Frederick had damaged her vehicle. Deputy Browning further suggested during his testimony that S.F. owned the vehicle. While Frederick contends that there was conflicting evidence regarding who owned the vehicle, we are mindful that we must construe the evidence in the light most favorable to the State in resolving a sufficiency challenge. *Jenks*, 61 Ohio St.3d at 279. Moreover, while Frederick contends that the State failed to prove that he did not act with consent, the record suggests otherwise. S.F. was distressed during the 9-1-1 call and expressed alarm when Frederick slashed her tires. S.F. further told the dispatcher that Frederick slashed her tires because he did not want S.F. to have the ability to leave. It follows that the evidence presented at trial, when construed in the light most favorable to the State, was sufficient to demonstrate that Frederick damaged S.F.'s property without her consent.

{¶27} The second assignment of error is overruled.

**Disorderly Conduct**

{¶28} In support of his third assignment of error, Frederick posits that the trial court should have granted his motion for acquittal in regard to disorderly conduct because the State failed to present sufficient evidence that he "caused inconvenience, annoyance, or alarm in this matter[.]" S.F. was undeniably distraught during the 9-1-1 call. During the call, S.F. expressed

frustration with Frederick's behavior and she could be heard attempting to calm down her children as the incident unfolded. S.F. remarked that Frederick slashed her tires with the specific aim of preventing her from possessing the ability to leave the property. This evidence, when construed in the light most favorable to the State, was sufficient to survive Frederick's motion for acquittal as it demonstrated that Frederick engaged in turbulent behavior that caused inconvenience, annoyance, and alarm to S.F.

{¶29} The third assignment of error is overruled.

III.

{¶30} Frederick's first assignment of error is sustained. The second and third assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

                                _____

                                DONNA J. CARR
                                FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MICHELLE FINK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.